CROZIER *v.* FRIED. KRUPP AKTIENGESELL–
SCHAFT.

CERTIORARI TO THE COURT OF APPEALS OF THE DISTRICT
OF COLUMBIA.

No. 8.    Argued April 30, 1911.—Decided April 8, 1912.

Prior to the passage of the act of June 25, 1910, 36 Stat. 851, c. 423, a patentee, whose patent was infringed by an officer of the United States, could not sue the United States unless a contract to pay was implied; and the object of the statute is to afford a remedy under circumstances where no contract can be implied, but where the

property rights of the inventor have been appropriated by an officer of the United States for its benefit and the acts of such officer ratified by the Government by the adoption of such act.

Compensation for property taken under eminent domain need not necessarily be made in advance of the taking if adequate means be provided for a reasonably just and prompt ascertainment and payment thereof.

The duty to provide for payment of compensation for property taken under eminent domain may be adequately fulfilled by an assumption of such duty by a pledge either express or by necessary implication of the public good faith to that end.

The act of June 25, 1910, having afforded a remedy for a patentee whose property rights have been appropriated by an officer of the United States for the benefit of the Government, such patentee is entitled to maintain an action in the Court of Claims to have his compensation determined, and the statute makes full and adequate provisions for the exercise of power of eminent domain.

Since the enactment of the act of June 25, 1910, a patentee cannot maintain an action for injunction against an officer of the United States for infringing his patent for the benefit of the Government; his remedy is to sue in the Court of Claims for compensation.

In this case *held* that although this action was commenced before June 25, 1910, as it was confined solely to obtaining an injunction against future use, which cannot now be allowed, the action must be dismissed without prejudice to the right of the patentee to proceed in the Court of Claims for compensation under the act of 1910.

32 App. D. C. 1, reversed.

THE facts, which involve the right of a patentee to enjoin an officer of the United States from using the patent, and the construction and effect of the act of June 25, 1910, conferring jurisdiction on the Court of Claims in certain instances of claims of patentees against the United States, for use of patents, are stated in the opinion.

*Mr. Stuart McNamara,* Special Assistant to the Attorney General, with whom *The Attorney General* was on the brief, for petitioner:

The suit is unauthorized, being either against the United States directly, which is the only person to be

affected by the decree, in which case a necessary party is wanting; or indirectly against the United States through the person of its officer and agent, for which proceeding no authority is vouchsafed by law.

The rule that the Government is immune from suit except where immunity is waived applies to the United States. Bracton, de Leg., 168 B; Staunford Prerogative, 72 B; Hale, Analysis of Law, § 9; *Doe* v. *Roe,* 8 Mees. and W. 579. It cannot be subjected to legal proceedings at law or in equity without its consent, and whoever institutes such proceedings must bring his case within the authority of some act of Congress. *United States* v. *Clark,* 8 Pet. 444. The same exemption from judicial process extends to the property of the United States and for the same reasons. *The Siren,* 7 Wall. 152, 154.

The United States has consented to be sued through successive acts of Congress. These suits must be filed in the Court of Claims or in the Circuit or District Courts of the United States. The first consent was granted in the act of February 24, 1855, 10 Stat., c. 122, p. 612, followed by the act of March 3, 1863, 12 Stat., c. 92, p. 765, and the act of March 3, 1887, 24 Stat., c. 359, p. 509, with amendments, and finally in the recent act (passed since the decree below) of June 25, 1910, 36 Stat., c. 423, p. 853.

Under the statutes the United States may be sued on a contract where it or its representatives have used the inventions under a contract made by the United States with the owner of the invention. *United States* v. *Palmer,* 128 U. S. 262; *United States* v. *Berdan Company,* 156 U. S. 552. The United States may also be sued under an implied contract, where it has appropriated the patented property of an individual under circumstances implying an agreement on the part of the Government to pay reasonable compensation therefor. *United States* v. *Great Falls Mfg. Co.,* 112 U. S. 645; *United States* v. *Alexander,* 148 U. S. 186, 191. But the Government

cannot be sued in cases of tort. The United States has not consented to be sued in actions sounding in tort for wrongs done by their officers, even though in the discharge of official duties. *Gibbons* v. *United States*, 8 Wall. 269; *Langford* v. *United States*, 101 U. S. 341; *Hill* v. *United States*, 149 U. S. 593; *Schillinger* v. *United States*, 155 U. S. 163; *Russell* v. *United States*, 182 U. S. 516; *Stanley* v. *Schwalby*, 147 U. S. 508, 512.

This immunity does not extend to the officers of the Government. In times of peace they are personally liable to an individual whose rights of property they have wrongfully invaded, even by authority of the United States. *Bates* v. *Clark*, 95 U. S. 204. Such officers, although acting under the orders of the Government, are personally liable to be sued for their own infringement of a patent. *Cammeyer* v. *Newton*, 94 U. S. 225, 235.

In the recent act, approved June 25, 1910, the patentee is given still further authority to sue the United States, and he may now file suit in the Court of Claims to recover compensation where his patents have been used without his consent, though there be no contract with the Government, express or implied. The conceit of suing the officer in this case does not save the proceeding from its necessary gravitation into its reality as a suit against the United States and its property. The United States cannot be sued in this indirect manner any more readily than in a direct proceeding. *Belknap* v. *Schild*, 161 U. S. 10; *International Postal Supply Co.* v. *Bruce*, 194 U. S. 601.

The petitioner has no interest in the suit, has made no profits, and no damages are asked from him.

The frame of the bill seeking to enjoin the future making of field guns and carriages does not take the case out of the rule. The injunction, if granted, necessarily affects only the Government and its property. *Dashiell* v. *Grosvenor*, 162 U. S. 424.

The dominion of the owner of a patent confers no

rights greater than those of the owner of other property. He may secure compensation from the Government for the taking of his patented property, but he may not restrain the taking. *Schillinger* v. *United States*, 155 U. S. 163, 168.

A very important branch of public policy supports the doctrine of the immunity of the United States from being sued and enjoined by a patentee under such circumstances as these. The Government has reserved no right in the patents conferred superior to that bestowed, but it must retain its own sovereignty, one incident of which is the right to be free from being enjoined in its public works whenever a litigant may conceive an infringement and resort to suit.

Plain, adequate, and complete remedy may be had by respondent for the invasion of its patents and no circumstances of the case warrant the court's interference by injunction, even if jurisdiction to do so otherwise existed. *Bates* v. *Clark*, 95 U. S. 204; *Poindexter* v. *Greenhow*, 114 U. S. 270; *Armstrong-Whitworth Co.* v. *Norton*, 15 App. D. C. 223; *United States* v. *Lee*, 106 U. S. 196.

Wholly apart from the considerations which apply to a case where, as in the case at bar, effort is being made to enjoin the United States, there is still no authority for the injunction even were both parties private litigants, for under the circumstances the rule of the apportionment of hardships would be invoked and the injunction accordingly denied. Courts of equity frequently weigh the relative hardship inuring to the complainant if the injunction be denied, and to the defendant, if it be granted. And if it appear that the injury resulting to the defendant from the granting of the injunction would be harsher and more oppressive than that falling to the complainant if it be denied, the courts will remit the complainant to his other remedy and refuse to enjoin. *Gerken* v. *Hall*, 71 N. Y. Suppl. 753; *Gray* v. *Patterson*, 45 Atl. Rep.

995, N. J., 1900; *Lloyd* v. *Catlin Co.*, 210 Illinois, 460; *Smith* v. *Sands*, 24 Fed. Rep. 470; *Bowers Dredging Co.* v. *N. Y. Dredging Co.*, 77 Fed Rep. 980; *Huntington* v. *Alpha Portland Cement Co.*, 91 Fed. Rep. 534.

*Mr. William A. Jenner* for respondent:

The right of a patentee to make, use and vend the patented invention is exclusive of the Government of the United States as well as of all others, and any use of such invention unauthorized by the owner of the letters patent, whether done directly by the United States or indirectly through one of its officers, is a violation of that right. *Belknap* v. *Schild*, 161 U. S. 10; *Hollister* v. *Benedict Mfg. Co.*, 113 U. S. 59; *James* v. *Campbell*, 104 U. S. 356; *Cammeyer* v. *Newton*, 94 U. S. 225, 235; *United States* v. *Burns*, 12 Wall. 246.

The fact that the invasion of a plaintiff's property is done by a defendant while acting in his official capacity as an officer of the United States Government or of a state government does not of itself justify the wrong nor deprive plaintiff of the relief which otherwise the court would grant. *Davis* v. *Gray*, 16 Wall. 203; *Osborn* v. *United States Bank*, 9 Wheat. 738; *Board of Liquidation* v. *McComb*, 92 U. S. 531, 541; *Allen* v. *Baltimore & Ohio R. R.*, 114 U. S. 311; *Pennoyer* v. *McConnaughy*, 140 U. S. 1; *Howell* v. *Miller*, 91 Fed. Rep. 129; *American School of Healing* v. *McAnnulty*, 187 U. S. 94; *United States* v. *Lee*, 106 U. S. 196; *Tindal* v. *Wesley*, 167 U. S. 204; *Poindexter* v. *Greenhow*, 114 U. S. 270; *Bates* v. *Clark*, 95 U. S. 204; *Teal* v. *Felton*, 12 How. 284; *Little* v. *Barreme*, 2 Cr. 169; *Elliott* v. *Swarthout*, 10 Pet. 137. *Belknap* v. *Schild*, 161 U. S. 10; *International Postal Supply Co.* v. *Bruce*, 194 U. S. 601, do not sustain the defendant's contention, and the facts and the prayer for relief in those cases are materially different from those in the case at bar.

The courts have frequently entertained jurisdiction of actions brought to enjoin officers of the United States from infringement of letters patent. *Dashiell* v. *Grosvenor*, 162 U. S. 425; *Cammeyer* v. *Newton*, 94 U. S. 225; *James* v. *Campbell*, 104 U. S. 356; *Hollister* v. *Mfg. Co.*, 113 U. S. 59.

The argument that an injunction against the manufacture by defendant of guns and gun carriages infringing complainant's patent would in effect be an injunction against the free use by the United States of the material at its arsenals used in the manufacture of guns and gun carriages, and that the case is within *Belknap* v. *Schild* and *International Postal Supply Co.* v. *Bruce*, is untenable. See *Howell* v. *Miller*, 91 Fed. Rep. 129.

The complainant had no remedy at law for the infringement by defendant of its patents.

It was intimated in *James* v. *Campbell*, 104 U. S. 356, and *Hollister* v. *Manufacturing Co.*, 113 U. S. 59, that an action would lie within the jurisdiction of the Court of Claims to recover from the Government upon an implied promise to compensate a patentee for the use by the Government, or one of its officers, of his patented invention, but it was later settled that such a suit could not be maintained either in the Court of Claims, *Shillinger* v. *United States*, 155 U. S. 163, or in the Circuit Court of the United States, *Hill* v. *United States*, 149 U. S. 593.

If the officers of the United States have since the act approved June 25, 1910, used or shall hereafter use complainant's patented design, it is possible or probable that complainant may receive reasonable compensation under that act in the Court of Claims, but that possibility does not operate to defeat complainant's right to the equitable relief sought when the bill was filed.

The general rule is that where jurisdiction in equity has become established, a subsequent statute creating a remedy at law or removing the obstacles at law upon

the existence of which the equity jurisdiction was origi-_ nally founded does not oust equity of that jurisdiction, unless the statute affirmatively discloses the legislative intent to make the legal remedy exclusive. 16 Cyc. 34, and cases cited, and see *White* v. *Meday,* 2 Edw. Ch. (N. Y.) 486; *New York Ins. Co.* v. *Roulet,* 24 Wend. 504– 514; *Mayne* v. *Griswold,* 2 Sandf. (Sup. Ct. N. Y.) 463; *Saitly* v. *Elmore,* 2 Paige, 497; *Labadie* v. *Hewitt,* 85 Illinois, 341; *McNab* v. *Heald,* 41 Illinois, 326; *Crass* v. *R. R.,* 96 Alabama, 447; *Hardeman* v. *Battérlea,* 53 Georgia, 36.

The act of June 25, 1910, does not evidence any intent to oust equity when its jurisdiction had attached because there is no expression, and the act is not retroactive.

Mr. Chief Justice White delivered the opinion of the court.

The defendant, a corporation organized under the laws of the German Empire, commenced this suit on June 8, 1907, in the Supreme Court of the District of Columbia. Relief was sought because of alleged infringements of three described letters patent of the United States, originally issued in the name of Fried. Krupp and assigned to the corporation. Two of the patents, numbered 722,724 and 722,725, were granted in 1903, and the third, issued in 1905, was numbered 791,347. The patents related to improvements in guns and gun carriages. The petitioner here, William Crozier, was named as sole defendant in the bill.

After full averments as to the issue of the patents and the assignments by which the plaintiff had become the owner thereof, it was charged that the defendant Crozier well knowing of the existence of the patents "in violation and infringement of said letters patent and of the exclusive rights granted and secured under said letters patent . . . since the seventeenth day of March,

1903, and within the period of six (6) years prior to the filing of this bill of complaint, in the city of Bridgeport, State of Connecticut, and in the Watervliet Arsenal in the State of New York, and in the Rock Island Arsenal in the State of Illinois, . . . and elsewhere in the United States," has "made and used, or caused to be made and used, is now making and causing to be made and used and threatens and intends to continue to make or cause to be made and to use and cause to be used," guns and recoil-brake apparatus and guns and gun carriages embodying the inventions owned by the complainant, in violation of the rights secured by the patents.

The prayer was for a preliminary and a permanent writ enjoining the defendant "his agents and employés, from making or using or causing to be made or used any guns or gun carriages or other devices which shall contain or employ the inventions or any of the inventions covered and secured by said letters patent or any of said letters patent." There was also a prayer that the defendant "may be compelled to account for and pay over to your orator all the profits which the defendant has or had derived from any making or using of any gun or any specimen or device covered and secured by said letters patent or any of said letters patent, and that also the defendant be decreed to pay all damages which your orator has incurred or shall incur upon account of defendant's infringement of any of said letters patent, with such increase thereof as shall be meet. . . ."

A stipulation was filed in the cause, in which, while expressly reserving the right of the defendant "to demur or otherwise plead to the bill of complaint, because of lack of jurisdiction on any ground, it was agreed as follows:

"The complainant stipulates that no pecuniary benefit has accrued to the defendant, William Crozier, by reason of the acts set forth in the bill, and complainant waives any claim against said defendant for an accounting of the

profits or for damages, if any, arising out of or suffered by the complainant by reason of the acts and things set forth in the bill. Defendant stipulates and agrees that the Government of the United States of America and the Ordnance Department of said Government have manufactured, are now manufacturing, and intend to continue the manufacture and use, or to cause to be manufactured for their use, field guns and carriages made after the so-called 'Model of 1902' referred to in the bill of complaint, the claim or claims of complainant being in nowise admitted; that the defendant, William Crozier, sued in this suit is an officer in the United States Army and Chief of the Ordnance of the United States Army, and is the officer in the service of the United States who directs and is in charge of such manufacture of said field guns and carriages for the United States. The complainant concedes that the defendant, William Crozier, is such officer. The defendant further stipulates and agrees that the complainant is a corporation organized and existing under the laws of the Empire of Germany and a citizen of said Empire and a subject of the Emperor of Germany.

"Further, complainant desires to amend its bill in certain particulars, and the defendant desires to consent thereto. It is therefore stipulated that the bill of complaint herein be amended to read as follows: In paragraph XXXII of said bill shall be eliminated and expunged the words 'a preliminary and also,' and also the words ' or using' and the words ' or used,' so that the said 32nd paragraph of said bill of complaint shall, when so amended, read as follows:

"'And your orator therefore prays your honors to grant unto your orator a permanent writ of injunction issuing out of and under the seal of this honorable court directed to the said defendant, William Crozier, and strictly enjoining him, his agents and employés, from making or causing to be made any guns or gun carriages or other

devices which shall contain or employ the inventions
or any of the inventions covered and secured by said
letters patent or any of said letters patent.'

"Paragraph XXXIII of said bill of complaint shall
be amended so as to eliminate and expunge from said
paragraph the following words:

"'by a decree of this court may be compelled to account
for and pay over to your orator all the profits which the
defendant has or had derived from any making or using of
any gun or any specimen or device covered and secured by
said letters patent or any of said letters patent, and that
also the defendant be decreed to pay all damages which
your orator has incurred or shall incur upon account of
defendant's infringement of any of such letters patent,
with such increase thereof as shall seem meet, and that
also the defendant'

"so that the paragraph marked XXXIII when so
amended shall read as follows:

"'And your orator further prays that the defendant
be decreed to pay the costs of this suit and that your
orator may have such other and further relief as the
equity of the cause or the statutes of the United States
may require and to this court may seem just.'"

The defendant demurred to the amended bill on various
grounds, all of which, in substance, challenged the juris-
diction of the court over the cause on the ground that
the suit was really against the United States.

The demurrer was sustained and the bill dismissed.
The Court of Appeals reversed and remanded the cause for
further proceedings not inconsistent with its opinion.
32 App. D. C. 1.

The court held that there was a broad distinction be-
tween interfering by injunction with the use by the United
States of its property and the granting of a writ of in-
junction for the purpose of preventing the wrongful
taking of private property, even although the individual

who was enjoined from such taking was an officer of the Government, and although the purpose of the proposed taking was to appropriate the private property when taken to a governmental purpose. The cases of *Belknap* v. *Schild*, 161 U. S. 10, and *International Postal Supply Company* v. *Bruce*, 194 U. S. 601, were analyzed and held to be apposite solely to the first proposition, that is the want of authority to interfere with the property of the United States used for a governmental purpose. The court said:

"It will thus be seen that in the *Belknap* and *Bruce Cases* the subject-matter involved was property of the United States, and that, therefore, the United States was necessarily a party. In the present case it is not sought to disturb the United States in the possession and use of the guns already manufactured. The court is not asked to deal with property of the United States. The plaintiff simply asks that an officer of the United States be restrained from invading rights granted by the Government itself. The acts complained of are not only not sanctioned by any law, but are inconsistent with the patent laws of the United States."

A writ of certiorari was thereupon allowed.

The arguments at bar ultimately considered but affirm on the one hand and deny on the other the ground of distinction upon which the court below placed its ruling and by which the decisions in *Belknap* v. *Schild* and *International Postal Supply Company* v. *Bruce* were held to be distinguishable from the case in hand, and therefore not to be controlling. Thus the Government insists that although under the stipulation and the bill as amended, it resulted that no damages were sought in respect to use by the Government of the patented inventions, and no interference of any kind was asked with property belonging to the Government, nevertheless the suit was against the United States, because the defendant was conceded to be

an officer of the Army of the United States, engaged in the duty of making or causing to be made guns or gun carriages for the Army of the United States. This, it is contended, is demonstrated to be the case by considering that the right to enjoin the officer of the United States, which the court below upheld, virtually asserts the existence of a judicial power to close every arsenal of the United States. On the other hand, the plaintiff insists that the act of the officer in wrongfully attempting to take its property cannot be assumed to be a governmental act, but must be treated as an individual wrong which the courts have the authority to prevent. The exertion of the power to enjoin a wrong of that nature in order to prevent the illegal conversion of private property is, it is urged, a manifestly different thing from using the process of injunction to interfere with property in the possession of the Government and which is being used for a public purpose. But we do not think, under the conditions which presently exist, we are called upon to consider the correctness of the theory upon which the Court of Appeals placed its decision or the soundness of the contentions at bar by which that theory is supported on the one hand or assailed on the other. We reach this conclusion because since October 7, 1908, when the decision of the Court of Appeals was rendered, the subject to which the controversy relates was dealt with by Congress by a law enacted on June 25, 1910, 36 Stat., c. 423, p. 851, as follows:

"An Act To provide additional protection for owners of patents of the United States, and for other purposes.

"*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That whenever an invention described in and covered by a patent of the United States shall hereafter be used by the United States without license of the owner thereof or lawful right to use the same, such owner may recover reasonable compensation for such use by suit in the Court

of Claims: *Provided, however,* That said Court of Claims shall not entertain a suit or reward [*sic*] compensation under the provisions of this Act where the claim for compensation is based on the use by the United States of any article heretofore owned, leased, used by, or in the possession of the United States: *Provided further,* That in any such suit the United States may avail itself of any and all defenses, general or special, which might be pleaded by a defendant in an action for infringement, as set forth in Title Sixty of the Revised Statutes, or otherwise: *And provided further,* That the benefits of this Act shall not inure to any patentee, who, when he makes such claim is in the employment or service of the Government of the United States; or the assignee of any such patentee; nor shall this Act apply to any device discovered or invented by such employé during the time of his employment or service."

The text of this statute leaves no room to doubt that it was adopted in contemplation of the contingency of the assertion by a patentee that rights secured to him by a patent had been invaded for the benefit of the United States by one of its officers, that is, that such officer under the conditions stated had infringed a patent.

The enactment of the statute, we think, grew out of the operation of the prior statute law concerning the right to sue the United States for the act of an officer in infringing a patent as interpreted by repeated decisions of this court. *United States* v. *Palmer,* 128 U. S. 62; *Schillinger* v. *United States,* 155 U. S. 163; *United States* v. *Berdan Fire-Arms Mfg. Co.,* 156 U. S. 552; *Russell* v. *United States,* 182 U. S. 516; *Harley* v. *United States,* 198 U. S. 229. The effect of the statute was thus pointed out in the last cited case. (198 U. S. p. 234.)

"We held in *Russell* v. *United States,* 182 U. S. 516, 530, that in order to give the Court of Claims jurisdiction, under the act of March 3, 1887, 24 Stat. 505, c. 359,

defining claims of which the Court of Claims had juris-
diction, the demand sued on must be founded on 'a con-
vention between the parties—a coming together of minds.'
And we excluded, as not meeting this condition, those
contracts or obligations that the law is said to imply from
a tort. *Schillinger* v. *United States*, 155 U. S. 163; *United
States* v. *Berdan Fire-Arms Mfg. Co.*, 156 U. S. 552."

In other words, the situation prior to the passage of the
act of 1910 was this. Where it was asserted that an officer
of the Government had infringed a patent right belonging
to another—in other words, had taken his property for the
benefit of the Government—the power to sue the United
States for redress did not obtain unless from the proof
it was established that a contract to pay could be im-
plied—that is to say, that no right of action existed
against the United States for a mere act of wrongdoing
by its officers. Evidently inspired by the injustice of this
rule as applied to rights of the character of those embraced
by patents, because of the frequent possibility of their
infringement by the acts of officers under circumstances
which would not justify the implication of a contract,
the intention of the statute to create a remedy for this
condition is illustrated by the declaration in the title
that the statute was enacted "to provide additional
protection for owners of patents." To secure this end,
in comprehensive terms the statute provides that whenever
an invention described in and covered by a patent of the
United States "shall hereafter be used by the United
States without license of the owner thereof or lawful
right to use the same, such owner may recover reasonable
compensation for such use by suit in the Court of Claims."
That is to say, it adds to the right to sue the United
States in the Court of Claims already conferred when con-
tract relations exist the right to sue even although no ele-
ment of contract is present. And to render the power
thus conferred efficacious the statute endows any owner of

a patent with the right to establish contradictorily with the United States the truth of his belief that his rights have been in whole or in part appropriated by an officer of the United States, and if he does so establish such appropriation that the United States shall be considered as having ratified the act of the officer and be treated as responsible pecuniarily for the consequences. These results of the statute are the obvious consequences of the power which it confers upon the patentee to seek redress in the Court of Claims for any injury which he asserts may have been inflicted upon him by the unwarranted use of his patented invention and the nature and character of the defences which the statute prescribes may be made by the United States to such an action when brought. The adoption by the United States of the wrongful act of an officer is of course an adoption of the act when and as committed, and causes such act of the officer to be, in virtue of the statute, a rightful appropriation by the Government, for which compensation is provided. In substance, therefore, in this case, in view of the public nature of the subjects with which the patents in question are concerned and the undoubted authority of the United States as to such subjects to exert the power of eminent domain, the statute, looking at the substance of things, provides for the appropriation of a license to use the inventions, the appropriation thus made being sanctioned by the means of compensation for which the statute provides.

This being the substantial result of the statute, it remains only to determine whether its provisions are adequate to sustain and justify giving effect to its plain and beneficent purpose to furnish additional protection to owners of patents when their rights are infringed by the officers of the Government in the discharge of their public duties. This inquiry may be solved, under the conditions here involved, by taking the most exacting

aspect of the well established and indeed elementary requirements in favor of property rights essential to be afforded in order to justify the taking by government of private property for public use.[1]  Indisputably the duty to make compensation does not inflexibly, in the absence of constitutional provisions requiring it, exact, first, that compensation should be made previous to the taking— that is, that the amount should be ascertained and paid in advance of the appropriation—it being sufficient, having relation to the nature and character of the property taken, that adequate means be provided for a reasonably just and prompt ascertainment and payment of the compensation; second, that, again always having reference to the nature and character of the property taken, its value and the surrounding circumstances, the duty to provide for payment of compensation may be adequately fulfilled by an assumption on the part of government of the duty to make prompt payment of the ascertained compensation—that is, by the pledge, either expressly or by necessary implication, of the public good faith to that end.

Coming to apply these principles and confining ourselves in their application, as we have done in their statement, strictly to the conditions here before us, that is, the intangible nature—patent rights—of the property taken, the great possibilities in the essential operations of government that such rights may be invaded by incorporating them into property of a public character, of the vital public interest involved in the subject-matter of the patents in question and the grave detriment to the very existence of government which might result from interference with the right of the Government to make and use

---

[1] *United States* v. *Russell,* 13 Wall. 623; *Cherokee Nation* v. *Southern Kan. Ry. Co.,* 135 U. S. 641; *Sweet* v. *Rechel,* 159 U. S. 380; see Lewis' Eminent Domain, 3d ed., vol. 2, §§ 675, 679, and Cooley Cons. Lim., 7th ed., p. 813.

instrumentalities of the character of those with which the patents in question are concerned, of the purpose which the statute manifests to add additional protection and sanction to private rights, and the pledge of the good faith of the Government which the statute plainly implies to appropriate for and pay the compensation when ascertained as provided in the statute, we think there is no room for doubt that the statute makes full and adequate provision for the exercise of the power of eminent domain for which considered in its final analysis it was the purpose of the statute to provide. Indeed, the desire to confine ourselves to the particular case before us has led us to state and limit the doctrine which we here apply, when it was possibly unnecessary to do so. We say this because no contention was made in argument by counsel for the corporation that the statute of 1910 does not provide methods of compensation adequate to the exercise of the power of taking for which the statute provides. Thus, in the argument, it is said: "If the officers of the United States have since the act . . . used or shall hereafter use complainant's patented design, it is possible or probable that complainant may receive reasonable compensation under the act in the Court of Claims,"—this statement being followed by an insistence that even although this be the case the statute is not controlling because it was enacted after the bill was filed and did not therefore retroactively deprive the court below of the power to afford relief under the conditions existing when the suit was commenced. The conclusion of the argument on this subject was thus stated:

"The general rule is that where jurisdiction in equity has been established a subsequent statute creating a remedy at law or removing the obstacle at law upon which the existence of the equity jurisdiction was originally founded does not oust equity of that jurisdiction unless the statute affirmatively discloses the legislative

intent to make the legal remedy exclusive . . . We cannot discover in the act of June 25, 1910, any evidence of an intent to oust equity when its jurisdiction had attached, because there is no expression and the act is not retroactive."

But this contention is either an afterthought or is occasioned by overlooking the amendment to the pleadings operated by the stipulation to which we have hitherto referred. By that stipulation every conceivable claim based on the prior use of infringing devices was withdrawn. The prayer for a preliminary restraint was waived and all right to an accounting was likewise withdrawn. As a result the case was confined solely to obtaining at the end of the suit a permanent injunction forbidding the making of, or causing to be made by the defendant, guns or gun carriages embodying the inventions owned by complainant.

Upon the hypothesis that the decree of the court below remanding the case for further proceedings not inconsistent with its opinion was correct under the conditions existing when it was rendered, clearly under the circumstances now existing, that is, the acquiring by the Government under the right of eminent domain, as the result of the statute of 1910, of a license to use the patented inventions in question, there could be no possible right to award at the end of a trial the permanent injunction to which the issue in the case was confined. Moreover, taking a broader view and supposing that a final decree granting a permanent injunction had been entered below, in view of the subject-matter of the controversy and the right of the United States to exert the power of eminent domain as to that subject, at most and in any event the injunction could rightfully only have been made to operate until the United States had appropriated the right to use the patented inventions, and as that event has happened the injunction, if granted, would no longer have operative

force. It follows that the decree of the Court of Appeals, must be reversed with directions to that court to affirm the decree of the Supreme Court of the District of Columbia dismissing the bill, without prejudice however to the right of the defendant here, who was the complainant below, to proceed in the Court of Claims in accordance with the provisions of the act of 1910.

*Reversed and remanded.*