INTERNATIONAL CURTIS MARINE TURBINE CO. et al. v. WILLIAM CRAMP & SONS SHIP & ENGINE BLDG. CO.

(District Court, E. D. Pennsylvania. March 20, 1916.)

No. 263.

UNITED STATES ⊕➞97—APPROPRIATION OF PATENT—CONTRACTOR FOR MAKING DEVICE FOR GOVERNMENT—LIABILITY FOR INFRINGEMENT.

Act June 25, 1910, c. 423, 36 Stat. 851 (Comp. St. 1913, § 9465), which provides that the owner of a patent covering an invention which shall be used by the United States without license may recover reasonable compensation for such use by suit in the Court of Claims, in effect provides for the appropriation by the government by right of eminent domain, of a license to use any patented invention, which includes also the right to make the patented device; and, having such right, the government may contract for the making of all or any part of the same, and the contractor is protected against liability for infringement, the owner of the patent being limited to the remedy provided by the statute.

[Ed. Note.—For other cases, see United States, Cent. Dig. § 76; Dec. Dig. ⊕➞97.]

In Equity. Suit by the International Curtis Marine Turbine Company and the Curtis Marine Turbine Company of the United States against the William Cramp & Sons Ship & Engine Building Com-

pany. On rehearing sur defendant's motion to exclude evidence before special master. Motion denied.

Fish, Richardson, Herrick & Neave, of Boston, Mass., for plaintiffs.

Edwards, Sager & Wooster, of New York City, and Dickson, Beitler & McCouch, of Philadelphia, Pa., for defendant.

THOMPSON, District Judge. Since the argument upon the rehearing, the Circuit Court of Appeals for the Second Circuit, in 231 Fed. 1021, —— C. C. A. ——, has affirmed the decree of Judge Hough in the case of Marconi Wireless Telegraph Company of America v. Emil J. Simon, 227 Fed. 906, upon Judge Hough's opinion; Judge Ward dissenting. Judge Hough in his opinion said:

"The questions, therefore, become the following: (1) What is the legal position of the sovereign in respect of patent rights granted by itself under the Act of 1910? (2) How does that act, or more accurately the legal position of the United States thereunder, affect or protect an independent contractor?

"So far as the first query is concerned, it has been fully and finally answered by Crozier v. Krupp, 224 U. S. 305 [32 Sup. Ct. 488, 56 L. Ed. 771], which holds that, having regard to 'the undoubted authority of the United States as to such subjects [as patents] to exercise the powers of eminent domain, the statute * * * provides for *the appropriation of a license to use the inventions;* the appropriation thus made being sanctioned by means of compensation for which the statute provides.' It may in some sense be true, as is urged by the plaintiff, that the act is remedial, and does not disturb any of the rights of a patentee which existed before its passage. But it is also true that, if the act creates a legal status, the relation of the holder of that status to the rest of the world is affected by the statute, whether such change or modification of relation be specifically mentioned or described in the act or not.

"The Supreme Court has defined the somewhat inartificial language of the statute. What the act contemplates being done by the United States is to *use* an invention 'described in and covered by a patent.' This is held to be equivalent to the expropriation or appropriation of a 'license to use the inventions.' This means a license in its widest sense; i. e., both to make and to use, and possibly to sell, but certainly both to make and to use. In this instance the Navy, through its officers, has appropriated by right of eminent domain a license to make and use any and all articles covered by the patent in suit. It could plainly make them in its own yards or other work places by its hired employés or permanent officers. It could take Simon into its employment at a stated stipend, and it could even make that stipend the exact amount of his estimated profit under the contract. If this had been done, the plaintiff could certainly do nothing but institute an action in the Court of Claims. Simon would be as immune as an admiral. However repugnant to business and professional feeling this method of riding roughshod over the rights of a patentee may be, it is difficult for me to perceive that there is any substantial difference between what the government admittedly might have done and what it has done in respect of this contract. Any distinction drawn between doing an infringing job by day's work and doing the same job by contract is without substance.

"But it is said (and here hangs the plaintiff's whole case) that before the act of 1910 the holder of a patent could sue a contractor with the government for infringement as fully and freely as he could any one else, provided always that he did not by injunction or otherwise interfere with government possession of anything (however obnoxious to the patentee's rights) actually in governmental use. Brady v. Atlantic Works, supra [Fed. Cas. No. 1,794]; International, etc., Co. v. Cramp, 211 Fed. 124 [127 C. C. A. 522] and cases therein cited. In my opinion this is true, but not so as to the corrollary stated by plaintiff, viz., that since this right existed before the act of 1910, and is not explicitly taken away by that statute, it must still survive as fully as of old.

If the reason of the law fails, the law ought to fail with it; this maxim seems to me to apply very forcibly here. The reason for permitting actions for infringement by private parties against government contractors was that since infringement was a *tort*, and the United States had never consented to be sued *in tort*, patentees were without remedy. Now they have such remedy under the statute, and cannot take what the statute gives (or imposes), and retain what they had before, if it interferes with governmental enjoyment of its license. The United States has a license under this patent to make, use, and perhaps to sell, to any extent deemed beneficial to the commonwealth, and without any territorial or other limitation upon its right. A licensee to make and use is not (in the absence of specific language in his license) limited to making with his own hands, in his own shop, or by his own employés. He may employ, procure, or contract with as many persons as he chooses to supply him with that which he may lawfully use, provided such conduct does not change his relation to the licensor. In my opinion this is exactly what the government has done here, and Simon is not an infringer, because he is supplying lawful goods to a lawful licensee. Foster Hose Supporter Co. v. Taylor Co., 191 Fed. 1003 [111 C. C. A. 667]."

The decision of the Circuit Court of Appeals for the Second Circuit adopting the opinion of Judge Hough is to be regarded as decisive of the question here raised, unless the Circuit Court of Appeals for this circuit in its opinion and decree ordering an accounting determined as the law of this case that, in a suit by a patentee against an independent contractor, an accounting should be had of profits accruing in making turbine engines for torpedo boat destroyers for the government under contracts entered into after June 25, 1910.

The present suit was commenced in 1909, and the contracts under consideration upon the appeal were Nos. 30 and 31, entered into in 1908. There was apparently nothing before the court relating to contracts with the government subsequent to the passage of the act of June 25, 1910, and there is no discussion of any such transactions by the court in its opinion. Contracts Nos. 47, 48, 49, and 50 were not entered into until 1911, and it is apparent that the sole question before the court, where the question of jurisdiction was discussed, was one of equitable jurisdiction of a suit begun prior to the act of June 25, 1910. This is apparent from the following language in Judge Buffington's opinion (211 Fed. at page 152, 127 C. C. A. 550):

"Since the litigation began, the *two torpedo boat destroyers referred to* have been finished and delivered to the government, and the plaintiffs do not now ask that the decree shall in any wise be directed against these vessels, or against the government in respect thereof. The bill contains no averment that the defendant is building or threatening to build infringing turbines *for commercial use;* only certain ships of war are involved in the suit, and, for reasons to be briefly stated, we are of opinion that no injunction should now be granted. We do not agree that the court below should have dismissed the bill for want of jurisdiction. Neither the United States nor one of its officers is a party defendant, but the suit is brought solely against a private corporation that had contracted to do certain public work. The bill was filed in 1909, and we think *there was then* no doubt that the court below had the right to entertain it. * * * But since the suit was brought the act of 1910 has been passed, and has been interpreted by the Supreme Court in the recent case of Crozier v. Krupp, 224 U. S. 290, 32 Sup. Ct. 488, 56 L. Ed. 771. This statute, we think, furnishes a practical solution of the questions arising upon this branch of the case. Even if the plaintiffs did not disclaim the desire to interfere with the government's possession of the vessels, there is no longer any ground upon which a final injunction can be properly rested, even in a suit against a contractor with the government, where the dispute concerns such

property as vessels of war. *If the United States has infringed*, or shall hereafter infringe, the patents that we have been considering, the act of 1910 permits the plaintiffs to sue in the Court of Claims. Crozier v. Krupp, supra. And if the defendant shall undertake to infringe hereafter by making offending turbines *for commercial use*, relief can be obtained by another suit."

It seems to be conclusive, therefore, that the Circuit Court of Appeals had not before it in the consideration and decision of the case the situation now presented, and that its order for an accounting should not be construed as intended to include an inquiry whether the turbine engines in torpedo boat destroyers made by the defendant under contracts with the government entered into since June 25, 1910, infringed the plaintiffs' patent (as would have been the inquiry but for the provisions of the act of 1910), and, if found to be infringements, an inquiry and report regarding the defendant's profits. There was no decision by the Circuit Court of Appeals that the license acquired by the United States by right of eminent domain to use the invention of the plaintiffs' patent was not a license under the broad signification of the term "license to use," including the right to make and use, as was held by the special master in overruling the objection of the defendant to any inquiry into any transaction under contracts Nos. 47, 48, 49, and 50.

The court will therefore follow the construction of the act of 1910, adopted in Marconi Wireless Telegraph Company of America v. Simon, applying the doctrine of Crozier v. Krupp to a suit by a patentee against an independent contractor with the government. It is therefore held that the defendant is not, as to the contracts entered into since June 25, 1910, an infringer, and is not liable to an accounting for anything done under those contracts, and that the special master was in error in overruling the motion of the defendant to exclude from its accounting the profits, if any, made by defendant for building turbine engines under contracts 47, 48, 49, and 50.

It is ordered that the action of the special master in overruling the defendant's objection be overruled, and that the defendant's objection be sustained, without prejudice, as noted in the memorandum opinion filed July 2, 1915.