## VAN METER v. UNITED STATES.

### Nos. 110, 164.

Circuit Court of Appeals, Second Circuit.

Jan. 5, 1931.

HAND, Circuit Judge, dissenting in part.

John S. Powers, of Buffalo, N. Y. (Melville Church, C. B. Des Jardins, and C. C. Calhoun, all of Washington, D. C., of counsel), for appellant.

Charles B. Rugg, Asst. Atty. Gen., and Richard H. Templeton, U. S. Atty., and Harold B. Ehrlich, Asst. U. S. Atty., both of Buffalo, N. Y. (J. Frank Mothershead and Paul P. Stoutenburgh, both of Washington, D. C., of counsel), for the United States.

Before MANTON, L. HAND, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

This suit was tried, without the intervention of the jury, before the court. Title 28, U. S. Code, § 773 (28 USCA § 773). Special findings were made and a judgment entered for plaintiff below for $46,137.50.

Plaintiff was granted patent No. 1,192,-479, on July 25, 1916, on an application filed March 27, 1911, for a parachute apparatus. After July 25, 1916, plaintiff became an officer of the United States Army and continued as such, attached to the air service, at the trial of the action. As an officer in the United States Army, he could not sue the United States in the Court of Claims under the statute. Title 35 U. S. Code, § 68 (35 USCA § 68). To do so would require resigning his commission and leaving the service, even though the patent was granted to him prior to employment by the government. Congress passed a special act, upon which jurisdiction is based, which permits the plaintiff to prosecute his suit. It provides that "jurisdiction is hereby conferred upon the Court of Claims or the District Courts of the United States, notwithstanding the lapse of time or the statute of limitations and the fact that Solomon L. Van Meter, junior, is an employee of or in the Air Service of the United States, to hear, examine,

adjudicate, and render judgment on the claim of Solomon L. Van Meter, junior, for the use and manufacture by or for the United States without license of the owner thereof or lawful right to use or manufacture the same, of an invention of Solomon L. Van Meter, junior, described in or covered by letters patent numbered 1192479, issued by the Patent Office of the United States on the 25th day of July, 1916, prior to the time Solomon L. Van Meter, junior, entered the service of the United States." 43 Stat. pt. 2, p. 1601, c. 587, § 1, Private Acts, No. 271, 68th Congress, Tr. 408, 469. The purpose of this act was plain. It conferred jurisdiction on the Court of Claims or the District Court of the United States to render judgment on the claim for compensation of the plaintiff by reason of the infringement complained of and found in the court below.

The court made special findings and found as facts the validity of the patent and the infringement of claim 2, as modified by a disclaimer filed in the Patent Office. The court declined to award the plaintiff the entire profits as compensation against the government. The defendant appeals from the findings of infringement, and the plaintiff from the amount of the award.

■■■ The special act authorized a review by an appellate court (Colgate v. United States, 280 U. S. 43, 50 S. Ct. 22, 74 L. Ed. 157), but, since the case was tried without a jury, the review is limited to an inquiry as to whether the facts found support the judgment. Norris v. Jackson, 9 Wall. 125, 19 L. Ed. 608; Preston v. Prather, 137 U. S. 604, 11 S. Ct. 162, 34 L. Ed. 788; title 28, U. S. Code, § 875 (28 USCA § 875). No bill of exceptions has been filed or ordered by the court. The time to do so has expired.

The findings disclose a patent for a combination with a parachute and suspensory cords connected with the body of the user, of means attached to the body of the user for confining the parachute and the cords, together with means for releasing the parachute from confinement and means for quickening and insuring the expansion of the parachute when released, all elements being embodied in an apparatus worn upon the body of the user and unconnected with the aeroplane, so that it does not limit his movement with respect to the latter. The parachute is released by a pull on the release cord, irrespective of the position of the user with respect to the plane. With it the aviator may jump free of the plane, carrying the para-chute apparatus with him on his back, and release the parachute at will after having jumped. The court found this combination of elements novel and not disclosed by prior patents or publications offered in evidence; that there was no prior use of the device embodying this invention; that the combination of elements claimed in claim 2, as limited by the disclaimer, involved invention over the prior art; and that the patent was therefore valid and infringed.

On the accounting, the court found that, on the date of the suit, plaintiff owned the entire patent and all rights of action for past infringement thereof; that he was entitled to recover compensation for the non-licensed use and maufacture by the defendant of its infringing apparatus for a period from January 1, 1919, to August 15, 1925, and that during this period, 3,691 units of infringing parachute apparatus, for which was paid $1,292,740.46, had been used, and that $12.50 for each complete unit of the parachute apparatus was a reasonable royalty. These findings support the judgment which has been entered.

■■■ The court found as a fact the existence of the statutory prerequisites to a valid disclaimer. But it is argued that there is no evidence to support that finding or that the court below should not have found the existence of inadvertance, accident, or mistake. The existence of inadvertance, accident, or mistake is a question of fact. Since it has been found against the defendant, in one of the special findings that, without fraudulent or deceptive intention, the plaintiff claimed more than that of which he was the original or first inventor, and, in compliance with the U. S. Rev. Stat. §§ 4917, 4922 (35 USCA §§ 65, 71), he disclaimed such parts of the things patented as he did not choose to claim by virtue of the patent, his patent is valid for that which is truly his. This is the invention set forth in claim 2 as thus limited by the disclaimer. In view of this finding, the disclaimer cannot be successfully attacked here. The plaintiff did or said nothing indicating an intention to dedicate to the public the invention patented by him as described in claim 2. Both validity and infringement having been found, the plaintiff's right to recovery is established.

■■■ The defendant argues that the Tucker Act, title 28, U. S. Code, § 41(20) 28 USCA § 41(20), limits a recovery under it to $10,-000. The Tucker Act confers jurisdiction upon the District Court in certain classes of

cases, as claims arising against the United States and up to $10,000 upon any contract, expressed or implied, with the government for damages, liquidated or unliquidated. This is not limiting the general jurisdiction of the District Courts, but it confers jurisdiction in these classes of cases. But the special act for the plaintiff's benefit conferred upon the District Court authority to hear, examine, adjudicate, and render judgment on the claim of plaintiff for the unlicensed use or manufacture by or for the United States of his patented invention. It removed the disability to sue under which he suffered, and conferred jurisdiction on the District Court to render judgment on his claim. There is no sound reason for reading into the act a limitation as to the amount of recovery. The Tucker Act has no bearing upon the plaintiff's claim. He could not sue but for this special act. It conferred jurisdiction without respect to the amount involved. U. S. v. Pfitsch, 256 U. S. 547, 41 S. Ct. 569, 65 L. Ed. 1084; U. S. v. McGrane (C. C. A.) 270 F. 761.

Rice v. United States, 122 U. S. 611, 7 S. Ct. 1377, 30 L. Ed. 793, considered whether or not the general statute of limitations, applicable to suits in the Court of Claims, should apply to a suit in which the Court of Claims had been given jurisdiction by special act. It was held to apply, and the judgment of the Court of Claims was affirmed. But that case has no bearing upon the question here under consideration.

▆ The plaintiff appeals seeking a recovery of the manufacturer's profits rather than a royalty as allowed below. One of the purposes of this special act, which conferred jurisdiction upon the District Court, was to render judgment on the claim for compensation, which the plaintiff did not have because of the Act of 1918 (title 35, U. S. Code, § 68 [35 USCA § 68]). It provides: "The benefits of the provisions of this section shall not inure to any patentee who, when he makes such claim, is in the employment or service of the Government of the United States, or the assignee of any such patentee." The right of an inventor to hold the United States exclusively liable for recovery of reasonable and entire compensation for the unlicensed manufacture or use of his patent by the government was conferred by the Act of June 25, 1910, as amended by the Act of July 1, 1918 (title 35, U. S. Code, § 68 [35 USCA § 68]). The inventor might sue the contractor, who has manufactured and used the invention, for the United States, in the

United States District Court and recover the contractor's profits in such suit, but, by the amendment of 1918, the patentee was cut off from such suit against the contractor and left to a suit against the United States in a Court of Claims for the recovery of reasonable and entire compensation for the unlicensed use and manufacture of his invention. The special act made inapplicable as to this plaintiff this restriction against suit. The reasonable and entire compensation to be recovered by suit against the United States must include the contractor's profits which could previously have been recovered by a suit against the contractor. The court found that such profits existed, and that the amount was $139,758.74. The special act refers, we think, to the general statute providing for reasonable and entire compensation which is the standard by which plaintiff's claim for the use and manufacture for the United States by his patented invention will be measured. It is "his reasonable and entire compensation" the statute intended he should have. Foundation Co. v. Underpinning & Foundation Co. (D. C.) 256 F. 374; Luellen v. Baldwin Locomotive Works (D. C.) 11 F.(2d) 390. In Richmond Co. v. United States, 275 U. S. 331, 48 S. Ct. 194, 197, 72 L. Ed. 303, the court considered the effect of the amendment of July 1, 1918, to the Act of June 25, 1910. The suit was by an assignee of the patent brought under the 1918 act. The question was whether the assignee can sue for the infringement prior to the assignment. It was held the assignee may sue. The contractor was held liable for all contributory infringement up until the 1918 amendment. The amendment providing for the entire compensation takes away the right of suit against the contractor. The right against the government is given instead of that against the contractor, and should be the equivalent to be compensatory. It was said that, since assignability was a feature of the claim against the contractor, the purport of the 1918 act is to allow the assignee of a patent to sue for compensation for past years. The court said:

"The purpose of the amendment was to relieve the contractor entirely from liability of every kind for the infringement of patents in manufacturing anything for the government, and to limit the owner of the patent and his assigns and all claiming through or under him to suit against the United States in the Court of Claims for the recovery of his reasonable and entire compensation for such use and manufacture. The word 'entire'

emphasizes the exclusive and comprehensive character of the remedy provided. As the Solicitor General says in his brief in respect to the act, it is more than a waiver of immunity and affects an assumption of liability by the Government. * * * We must presume that Congress in the passage of the act of 1918 intended to secure to the owner of the patent the exact equivalent of what it was taking away from him. It was taking away his assignable claims against the contractor for the latter's infringement of his patent. The assignability of such claims was an important element in their value and a matter to be taken into account in providing for their just equivalent."

[7] By the U. S. Revised Statutes, § 4921, as amended by Act Feb. 18, 1922, § 8 (35 USCA § 70), evidence of a reasonable royalty is permissible and resorted to in the case of damages or profits not susceptible of calculation and determination with reasonable certainty, but here there is no such uncertainty. There is a definite finding stating the profits realized by the contractor from the manufacturer and the use in the United States of the infringing apparatus. Prior to the amendment of July 1, 1918, plaintiff could have recovered this sum in a suit in equity against the contractor. It was intended by the amendments to secure to the owner of the patent the exact equivalent of what it took away from him. It took away the profits, and the government undertook to pay such profits made in the manufacture by the contractor of the infringing apparatus.

The plaintiff may not recover damages sustained prior to September 18, 1920. The inventor who does not manufacture must give notice of infringement. American Caramel Co. v. Thomas Mills & Bro., 162 F. 147 (C. C. A. 3). September 18, 1920, is the first date of such notice. A patentee must mark products manufactured and sold as patented, and no damages are recoverable for infringement except on proof that the defendant was duly warned by notice of the infringement. Such notice is a prerequisite to recovery of damages. Rev. Stat. § 4900 (35 USCA § 49); American Caramel Co. v. Thomas Mills & Bro., supra; Flat Slab Patents Co. v. Northwestern Glass Co., 281 F. 51 (C. C. A. 8); Son v. Pressed Steel Car Co. (D. C.) 21 F.(2d) 528.

The judgment will be modified by allowing profits from September 18, 1920, and, as modified, is affirmed. The District Court is directed to enter judgment accordingly.

L. HAND, Circuit Judge (dissenting in part).

I concur in the disposition of this case, except that I think that the plaintiff's recovery should be limited to a reasonable royalty after September 18, 1920. The act of 1910 did not indeed give a "license" to the United States to exploit any patent which it found necessary for the public service (Cramp & Sons Ship & Engine Bldg. Co. v. International Curtis Marine Turbine Co., 246 U. S. 28, 38 S. Ct. 271, 62 L. Ed. 560), but it made lawful all acts of its officers, and as to these, left the patentee with no more than a "reasonable compensation." This was valid as a partial seizure by right of eminent domain. Crozier v. Krupp, 224 U. S. 290, 32 S. Ct. 488, 56 L. Ed. 771. However, it did not protect contractors with the United States (Cramp & Sons Ship & Engine Bldg. Co. v. International Curtis Marine Turbine Co., 246 U. S. 28, 38 S. Ct. 271, 62 L. Ed. 560), and the result was, either that the United States must itself manufacture all patented apparatus, or undertake to save harmless those who contracted with it, not only from damages, but from suits for profits.

The act of 1918 was passed to meet this situation; it provided that when a patented article was "used or manufactured by or for the United States," the patentee's remedy should be by suit in the Court of Claims for "his reasonable and entire compensation." Nobody disputes that this was to be his only remedy; the only question is what is his "entire compensation." Does that include more than his damages, which in the case at bar are "entirely" covered by a reasonable royalty? Or does it include the contractor's profits to which he would have been entitled but for the statute?

When a patentee recovers an infringer's profits, it is not at all as "compensation"; obviously it has nothing to do with making him whole for his loss. The infringer is treated as a constructive trustee of his gains, like one who has procured property by fraud or the like. Westinghouse v. Wagner, 225 U. S. 604, 618–622, 32 S. Ct. 691, 56 L. Ed. 1222, 41 L. R. A. (N. S.) 653. The remedy presupposes that the defendant's act is a wrong, since there is otherwise no basis in equity for so treating him. But the act of 1918 has made lawful the contractor's act, and, if valid, cut from under the patentee the only ground of the remedy. It could not have done this constitutionally without giving him full compensation for the property

seized, but that it has done, because, by now making the compensation "entire," the patentee can recover from the United States not only for his loss caused by its own user but for that caused by the contractor's manufacture. As this was adequate, the patentee had no cause of complaint for the seizure. Crozier v. Krupp.

As to patents granted after 1918, I can see no conceivable basis for imposing upon the United States any further liability; to do so would in effect establish an anomaly in the law of eminent domain. The United States might certainly seize the whole patent on such terms, and, here at any rate, the greater includes the less. Patents granted before 1918 are no different, and their inclusion throws no doubt upon the constitutionality of the act. We are not dealing with a cause of suit which arose before the act was passed; arguendo I may agree that this was "property," which could not be taken. But earlier patents the United States might seize in their entirety, as well as those granted later, and upon the same terms; these too it might exploit in part, if it might seize them in whole.

Finally, we cannot construe the statute in one sense as to patents granted before 1918 and in another as to those granted later, and by hypothesis in every case to get its work done the United States must still pay not merely the patentee's damages, but the contractor's profits. Yet that was in substance exactly its position between 1910 and 1918. It could get nothing done by its contractors unless it indemnified them against suits for profits, either expressly, or because they loaded the contract price against such possibilities. The statute, so construed, has effected nothing but a change of procedure, which can hardly have been its purpose.

The plaintiff's only support is certain language used by the Chief Justice in Richmond Screw Anchor Co. v. U. S., 275 U. S. 331, 48 S. Ct. 194, 72 L. Ed. 303, in a wholly different connection, and in deciding quite another question. We have often been admonished that we should not wrench the language of an opinion out of its setting, and apply it in vacuo. This seems to me preeminently an occasion to remember the caution; I cannot see the least reason to assume that the court in that case meant to provide for situations like the present, and it does not therefore seem necessary to make nice distinctions in the language used. For these reasons I believe that Judge Hazel was right in confining the recovery to a reasonable royalty.