MARCONI WIRELESS TELEGRAPH CO. OF AMERICA v. SIMON.

(District Court, S. D. New York. November 18, 1915.)

1. INJUNCTION ☞137—PRELIMINARY INJUNCTION—GROUNDS FOR DENIAL.
   An injunction pendente lite is always of grace and not of right, and will not be granted where it would be prejudicial to public or governmental interests.
   [Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 307–309; Dec. Dig. ☞137.]

2. PATENTS ☞287—APPROPRIATION OF LICENSE BY UNITED STATES—CONTRACTOR FOR MAKING DEVICE FOR GOVERNMENT—LIABILITY FOR INFRINGEMENT.
   Act June 25, 1910, c. 423, 36 Stat. 851 (Comp. St. 1913, § 9465), which provides that the owner of a patent covering an invention which shall be used by the United States without license may recover reasonable compensation for such use by suit in the Court of Claims, in effect provides for the appropriation by the government, by right of eminent domain, of a license to use any patented invention, which includes also the right to make the patented device; and, having such right, the government may contract for the making of all or any part of the same, and the contractor is protected against liability for infringement, the owner of the patent being limited to the remedy provided by the statute.
   [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 457–459; Dec. Dig. ☞287.]

In Equity. Suit by the Marconi Wireless Telegraph Company of America against Emil J. Simon. On motion for preliminary injunction, and counter motion by defendant to dismiss. Injunction denied, and motion to dismiss sustained, subject to condition.

Plaintiff moves for preliminary injunction in action on Marconi patent No. 763,772, with counter motion by defendant to dismiss the bill, as well as to deny the injunction, because: (a) Defendant is a resident of the Eastern district of New York; and (b) whatever infringement or use of the patented device in suit he has committed or made has been and will be by and through the construction of certain radio apparatus for the United States of America at the request of the Navy Department in accordance with plans and specifications laid down by that department and embodied in a contract with said department.

John W. Griggs and L. F. H. Betts, both of New York City, for plaintiff.

Walter H. Pumphrey, of New York City, for defendant and for Secretary of the Navy.

HOUGH, District Judge. The appearance of counsel representing the Navy Department is as amicus. The United States is not a party to this suit, but it is in my opinion competent for the government,

even in the most informal way, to intervene for the purpose of showing the interest of the public in what, upon its face, is an action between private parties.

The defendant's motion to dismiss the bill on the ground that he is sued in the wrong district must be denied, if the record is to stop here. So far as affidavit making goes, I think it shown by a present fair preponderance of evidence that the defendant has in the past usually resided within the Southern district, has always maintained an office here, and had and owned the sample set of apparatus (which is the infringement) within the Southern district shortly before suit. Under accepted practice the defendant can either appear, reserving his rights, and make the matter of residence an issue in the cause, or he may move for a reference in limine.

[1] Owing quite probably to my own interest in the unusual matters argued at bar, the discussions of counsel have extended over a wider range than an examination of the record renders necessary. If it be assumed that the action is well brought, that defendant is an infringer, and that his status as a contractor with the United States government affords him no protection, statutory or otherwise, it does not necessarily follow that a preliminary injunction should issue. An injunction, and especially one pendente lite, is always of grace and not of right. A complainant, however meritorious, may be sent over to final hearing, and even left to his accounting, rather than awarded a permanent injunction, for reasons which bear little, if any, relation to the merits of the controversy as between parties plaintiff and defendant.

Such is the case here. The Navy Department has by contract employed Simon to construct radio apparatus, without which certain vessels of war now approaching completion cannot go into commission. If Simon does not complete the articles for which he has contracted, injury to the military arm of the government will result. In the language of the Assistant Secretary of the Navy:

"Interference by injunction * * * with the fulfillment by Simon * * * of his contract with this department * * * would embarrass the department * * * and be detrimental to the interests of the naval service."

It is regrettable that this official opinion is contained in a letter to the court, not made a part of the moving papers, though now added to them by me. But the method by which one is advised of matters affecting the public welfare cannot prejudice the commonwealth. Therefore, because upon the assumption that Simon is an infringer the ordinary remedy against him would injure an arm of the government of the greatest immediate importance, no injunction will issue in any way interfering with the contract now existing between Simon and the United States. Without commenting further upon matters political rather than judicial, the case is within the exception recognized by Clifford, J., in Brady v. Atlantic Works, Fed. Cas. No. 1,794.

The motion to dismiss this bill, upon the ground that Simon, as a contractor with the government for articles infringing a patent of the United States, is protected by the "Act to provide additional protection for owners of patents of the United States and for other pur-

poses," approved June 25, 1910, raises a question of grave importance to private parties. In times of trouble, at periods when the arm of the government is in need of strengthening, the executive may be left in the exercise of powers, perhaps doubtful as matter of law, but temporarily necessary for national safety, by the refusal of drastic relief, and the remission of private litigants to slower processes of procuring pecuniary recompense. Such procedure, however, is temporary, and contributes nothing to the settlement of questions likely to be vexed in times when the asserted rights of private parties receive their ordinary measure of prompt recognition. In a suit on this patent before Veeder, J., in the Eastern district of New York, this question was suggested, but not necessarily involved. It was therefore not passed upon (Marconi Wireless Co. v. Fritz Lowenstein, memorandum, not for publication, October 1, 1914). Here the point cannot be evaded, because defendant has accepted all the statements contained in plaintiff's moving papers relating to the patent and its construction and the manufacture of Simon's apparatus, and upon these documents, all emanating from plaintiff, the motion to dismiss is made.

I think such a defense might have been set up by plea under the former practice, and may now be made by motion under equity rule 29 (198 Fed. xxvi, 115 C. C. A. xxvi). The material facts which would formerly have been asserted by plea or proven by evidence under the plea are these: Plaintiff is the owner, with good right to sue thereon, of a valid patent of the United States. Certain officers of the United States Navy drew plans and specifications for part of a radio apparatus which it was physically impossible to comply with except by infringing (outright or by contribution) the aforesaid patent of the plaintiff. Duly authorized governmental authority then invited bids upon said plans and specifications. All bidders, as well as the draughtsmen of said plans and specifications, were well aware of the existence of plaintiff's patent, and there must be conclusively imputed to them an intention to infringe or at least to perform acts which would constitute infringement in a private person.

Several parties bid for the contract under the plans aforesaid, including two licensees of this plaintiff. Simon was not the lowest bidder, but he was, in the opinion of the naval authorities, the best bidder, in that the apparatus devised or "laid out" by him was in compactness, strength, adjustment, and other purely mechanical attributes the best device offered. For this reason Simon's bid was accepted. He made and submitted to the laboratory at the Brooklyn Navy Yard one specimen or model of his apparatus. The making thereof is the act of infringement alleged, and the fulfillment of his contract by multiplying similar apparatus up to the limit of the contract is what is sought to be prevented by preliminary and final injunction.

It thus appears that there is an element of personal skill and mechanical superiority involved in Simon's machinery. This explains the action of the naval authorities; but it does not, as between private parties, affect in any way the question of infringement. Viewed without regard to the act of 1910, certain officers of the government deliberately committed the United States to an infringement of private rights; i. e., an appropriation of private property. Pursuant to this intent they

invited private citizens to assist in this contemplated infringement, and Simon consented to aid by manufacturing a compact and well-arranged infringing article. There is no proof (and in the nature of this motion there can be no final proof) that Simon is engaged in no other business than fulfilling this contract with the United States; but plaintiff has asserted in its own affidavits that he (Simon) has often so stated. It is equally true that there is no evidence or suggestion of any other infringement, present or contemplated, except that arising under the government's contract aforesaid.

Under these facts the position is taken by defendant that he is an employé, agent, or the like, of the United States. This cannot, I think, be sustained. He is an independent contractor; i. e., a person held at arm's length by the department with which he has contracted, one who gives bond, not for his general good conduct, but for the fulfillment of his contract, who may bring an action in the Court of Claims for any balance that he considers to be unpaid thereunder, and who may be sued, if he does not fulfill his obligation, not for malfeasance in office, but for breach of contract.

[2] The questions therefore become the following: (1) What is the legal position of the sovereign in respect of patent rights granted by itself under the act of 1910? (2) How does that act, or more accurately the legal position of the United States thereunder, affect or protect an independent contractor?

So far as the first query is concerned, it has been fully and finally answered by Crozier v. Krupp, 224 U. S. at page 305, 32 Sup. Ct. at page 491, 56 L. Ed. 771, which holds that, having regard to "the undoubted authority of the United States as to such subjects [as patents] to exercise the power of eminent domain, the statute * * * provides for *the appropriation of a license to use the inventions;* the appropriation thus made being sanctioned by the means of compensation for which the statute provides."

It may in some sense be true, as is urged by the plaintiff, that the act is remedial and does not disturb any of the rights of a patentee which existed before its passage. But it is also true that, if the act creates a legal status, the relation of the holder of that status to the rest of the world is affected by the statute, whether such change or modification of relation be specifically mentioned or described in the act or not.

The Supreme Court has defined the somewhat inartificial language of the statute. What the act contemplates being done by the United States is to *use* an invention "described in and covered by a patent." This is held to be equivalent to the expropriation or appropriation of a "license to use the inventions." This means a license in its widest sense; i. e., both to make and to use, and possibly to sell, but certainly both to make and to use.[1]

---

[1] It is inconceivable that the government could or would sell for gain patented articles which it had manufactured or caused to be manufactured. But can it be doubted that articles covered by a patent, used and then sold after condemnation by governmental authority, would lawfully pass into the hands of the purchaser? In this sense, at least, the appropriated license is one to sell.

In this instance the Navy, through its officers, has appropriated by right of eminent domain a license to make and use any and all articles covered by the patent in suit. It could plainly make them in its own yards or other work places by its hired employés or permanent officers. It could take Simon into its employment at a stated stipend, and it could even make that stipend the exact amount of his estimated profit under the contract. If this had been done, the plaintiff could certainly do nothing but institute an action in the Court of Claims. Simon would be as immune as an admiral. However repugnant to business and professional feeling this method of riding roughshod over the rights of a patentee may be, it is difficult for me to perceive that there is any substantial difference between what the government admittedly might have done and what it has done in respect of this contract. Any distinction drawn between doing an infringing job by day's work and doing the same job by contract is without substance.

But it is said (and here hangs the plaintiff's whole case) that before the act of 1910 the holder of a patent could sue a contractor with the government for infringement as fully and freely as he could any one else, provided always that he did not by injunction or otherwise interfere with governmental possession of anything (however obnoxious to the patentee's rights) actually in governmental use. Brady v. Atlantic Works, supra; International, etc., Co. v. Cramp, 211 Fed. 124, 127 C. C. A. 522, and cases therein cited. In my opinion this is true, but not so as to the corollary stated by plaintiff, viz., that since this right existed before the act of 1910, and is not explicitly taken away by that statute, it must still survive as fully as of old. If the reason of the law fails, the law ought to fail with it; this maxim seems to me to apply very forcibly here. The reason for permitting actions for infringement by private parties against government contractors was that since infringement was a *tort,* and the United States had never consented to be sued *in tort,* patentees were without remedy. Now they have such remedy under the statute, and cannot take what the statute gives (or imposes) and retain what they had before, if it interferes with governmental enjoyment of its license.

The United States has a license under this patent to make, use, and perhaps to sell, to any extent deemed beneficial to the commonwealth, and without any territorial or other limitation upon its right. A licensee to make and use is not (in the absence of specific language in his license) limited to making with his own hands, in his own shop, or by his own employés. He may employ, procure, or contract with as many persons as he chooses to supply him with that which he may lawfully use, provided such conduct does not change his relation to the licensor. In my opinion this is exactly what the government has done here, and Simon is not an infringer because he is supplying lawful goods to a lawful licensee. Foster Hose Supporter Co. v. Taylor Co., 191 Fed. 1003, 111 C. C. A. 667.

There is another and more technical view of the facts, viz.: What Simon contracted to furnish to the Navy Department is not a complete wireless apparatus, nor even a complete transmitting device, but only certain transmitter parts. The parts (to Simon's knowledge) could

never be used without uniting them with other devices not made or furnished by Simon, but well known in the art; and the whole apparatus, when assembled as intended by the Navy (to defendant's knowledge), would constitute a Marconi system. Therefore Simon should be regarded (if the matter were one in which the government had no interest) as a *contributory* infringer. "The essence of contributory infringement lies in concerting or plotting with others in an *unlawful* invasion of the patentee's rights." Goodyear, etc., Co. v. Jackson, 112 Fed. at page 148, 50 C. C. A. at page 161, 55 L. R. A. 692. Simon did agree with the naval authorities to contribute toward what would ordinarily be an infringement, but the United States could not infringe by using what Simon made because it was a licensee. Therefore Simon could not be a contributory infringer by assisting in doing a lawful thing. Bullock v. Westinghouse, 129 Fed. 105, 63 C. C. A. 607. On this view of the facts the conclusion urged by defendant is logical.

No injunction will issue. The motion to dismiss is granted, unless plaintiff elects in 20 days to plead over and allege infringements not arising from governmental contracts. If such election is made, defendant to answer in 20 days after amended bill filed.[2]

[2]NOTE.—Plaintiff elected not to plead over, and has appealed from a decree of dismissal.