## FLOYD SMITH AERIAL EQUIPMENT CO. v. IRVING AIR CHUTE CO.

(District Court, W. D. New York. September 29, 1921.)

No. 294–B.

1. Patents ⬤➡328—1,340,423, for parachute, claims 1, 4, 6, 10, and 13, held valid and infringed.

The Smith patent, No. 1,340,423, for a parachute for the use of aviators, claims 1, 4, 6, 10, and 13, *held* for a combination not anticipated, valid, and infringed.

2. Patents ⬤➡109—Substituted claims held within specification and not requiring supplemental oath.

Where the specification in an application described a "fabric material," claims later substituted, more specific and limited to "a sheet of flexible material," *held* within the description and not requiring a supplemental oath.

3. Courts ⬤➡518—Infringement by articles made for government not subject of suit in District Court.

Under Act June 25, 1910, as amended by Act July 1, 1918 (Comp. St. Ann. Supp. 1919, § 9465), providing that, where a patented invention shall be used by or manufactured by or for the United States without lawful right, the remedy of the patentee shall be by suit in the Court of Claims, a District Court is without jurisdiction to award damages for infringement by articles made for the United States under a contract by which it agreed to protect the manufacturer against damages for infringement, but it may award an injunction and damages where defendant has also sold such infringing articles to individuals.

---

⬤➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Equity. Suit by the Floyd Smith Aerial Equipment Company against the Irving Air Chute Company. Decree for complainant.

Wm. F. Freudenreich, of Chicago, Ill., and Charles W. Pooley, of Buffalo, N. Y., for plaintiff.

Clarence S. Walker, of Buffalo, N. Y., for defendant.

Laurence A. Janney, Sp. Asst. Atty. Gen. (Osgood H. Dowell, of Chicago, Ill., of counsel), for the United States as amicus curiæ.

HAZEL, District Judge. This is an action in equity for infringement of letters patent No. 1,340,423, granted to Floyd Smith on May 18, 1920, for a parachute or what is known as a "lifepack," and parachute paraphernalia for use of aviators in falling or leaping from an airship in flight. The device is simple in construction and of light weight. Parachutes carried in packs on the back of aviators during flights and opened up by air resistance upon jumping or falling, and parachutes of the free pack type or tied by a cord to the top of an airship and opening upon extension or stretching, admittedly were old and well-known devices when the patent herein was conceived. On this point the specification states:

"Parachutes are now carried in shoulder packs carried upon the back of an aviator and are adapted to be released by tearing or opening the pack and adapted to be extended by air resistance or by the top of the parachute being attached to the airplane by a cord which will break when fully extended. But this type of parachute has a decided disadvantage in that it depends upon the aviator being able to jump and drop away from the airplane in order to extend the parachute and cause it to open. If the airplane is falling and the aviator cannot get away from it, he may then merely fall with the plane."

By his improvement the inventor designed to overcome certain disadvantages resulting from falling with the plane, and to devise means for falling or leaping free therefrom to minimize the peril. His idea was that a lifepack should not be made to open immediately upon jumping, but should open up after being carried forward horizontally by momentum for a short distance or dropping from the plane after the aviator had opened up the pack while standing up on the plane by releasing a cord attached thereto to allow the parachute to catch the air and expand. To overcome the inefficiency of prior structures, the specification states that a feature of the invention is the use of a small automatically operated parachute placed on top of the main parachute which serves to accelerate opening the latter upon releasing it from the pack. In practice the pilot parachute first catches the air and assists in stretching the main parachute as the aviator drops or is lifted from the machine, or leaps away from it. The main parachute with its pilot, together with the pack and harness, comprises the inventor's preferred form of apparatus. The pilot parachute, however, is not believed to be an essential feature of the claims in suit. The principle by which the main parachute operates is the same whether its pilot is used or not since the function of the latter was to assist in rapidly opening up the pack. The specification describes the parachute as one contained in a pack for carrying on the back of the aviator who may release the fabric enfolded therein by pulling a cord extended from the

pack to the wearer's chest. The parachute fabric is provided with flaps which, after folding in the pack, are fastened together by a thread or by loops which easily part on jerking the cord to release the pack.

[1] The patentee simply claims, and I find his claim substantiated by the evidence, that he was the first to fold a parachute in a compact mass into a sheet of flexible material in a way to permit the suspending members to respond to a jerk of a cord extending from such members to the aviator's front and by such adaptation to open up the parachute in leaping or falling from the airplane.

Claims 1, 4, 6, 10, and 13 are typical of the invention, and claim 1 is fairly illustrative of it. It reads as follows:

"1. In combination. a parachute folded into a compact mass and having suspending members, a sheet of flexible material folded about said parachute and permitting the ends of said suspending members to project, releasable fastening means between each side of the sheet and some other portion of the sheet, a releasing device, and means connecting said fastening means to said releasing device."

The separate elements in combination are: (1) A folded parachute with suspending members. (2) A sheet of flexible material infolding the parachute with projecting suspending members. (3) Releasable fastening means. (4) A device for opening the pack and connecting the fastening means thereto.

Claim 4 includes the body harness attached to the pack; claim 6 is substantially the same as claim 4, save that the flaps are described as being on the side farther removed from the wearer; and claim 10 is the same as claim 1, except that in addition it has means for simultaneous release of the fastening means and drawing back parts of the sheet to expose the parachute; while claim 13 embodies the additional element of a pilot chute attached to the apex of the main chute.

The defenses in the main are invalidity of the patent, and limitation of the claims. The defendant contends, inter alia, that inasmuch as the Patent Office rejected the broad claims originally filed for a combination of a pack containing a folded parachute with free mounting on an air craft opening independenly on any fixed relation to the aircraft and for means releasable manually, and for a pack provided with spring means for opening it, the patentee, acquiescing therein by canceling such claims and accepting narrower ones, is not estopped from an interpretation of the claims in issue of such a scope as will include the combination of elements in suit, and also that they are strictly limited to a container for the parachute comprising a sheet of flexible material. Such a strict interpretation, however, would be unwarranted and indeed is not required by the prior state of the art or by any limitation placed on the claims by the patent office examiner. The improvement in question was intended to lessen the perils in the field of aviation, and the construction by the patentee of a so-called free lifepack during the war and the subsequent efforts to perfect the same fairly establish its novelty, although the improvement over the prior art seems very slight. No one before the patentee designed a device wherein light weight and effectiveness in straightening out the parachute under all conditions was secured, and in the circumstances

the simplicity of the improvement does not bar patentable protection for that which was reasonably achieved by it.

A broad interpretation to include, for example, means for folding the parachute or means for releasing the pack, would not be warranted in view of the substitution of narrower claims. But as finally allowed, the claims, even though considered of limited scope, are in my opinion entitled to a construction to include an obvious appropriation. Certainly a specious modification of enfolding the parachute should not be permitted to avoid the clear terms of the patent. The claims in issue, true enough, cannot be enlarged to cover infringement beyond their fair meaning, still the wording appears to be clear and explicit, and little room exists apparently for interpretation. The original claims were changed at different times, as the file wrapper and contents shows, to meet the objection of the Patent Office, and more specific claims were substituted; but the patentee did not at any time limit himself to a particular kind of a sheet of flexible material for folding the mass or to a flat sheet or one without any turning up or sewing at the ends to form corners. The elements of the combination of "a sheet of flexible material folded about said parachute" is thought to reside in a light and flexible material container for the fabric as distinguished from one that is rigid, hard, heavy, or firm.

Nothing is found in the prior art to require the limitation of the claims as urged by the defendant. In the Uttz patent, for instance, there is described a long container of pilot and main parachutes positioned underneath the airplane; the apparatuses being released by the action of coiled springs. In Van Meter's patent there is shown a body plate harnessed to the aviator's back which supports a casing for a parachute, preferably made of aluminum, and is released by a spring attachment. The Rouchleau patent also shows a receptacle carried on the aviator's back from which the parachute is forced out by fluid pressure. The Signaigo patent shows the container plate made of staves harnessed to the back of the aviator with means for throwing the parachute sideways from its seat. Such structure, however, as well as the others above mentioned, was heavy and cumbersome, and lacked lightness and easy facilities for releasing the pack. In the Fugi patent, No. 1,264,050, a close approach to complainant's patent is shown, but he lacked the element of the container. He adapted heavy padded casing for inclosing the parachute—a knapsack, and it is doubtful whether the pack would open up quickly. I think the life-pack in suit, with its flat sheet for enfolding the parachute and fastening and releasing means, was a patentable improvement over it. In the specification to Miller, patent No. 1,037,959, there is shown a case for enfolding the parachute body, presumably made of flexible material, but since the device was for a parachute carried on the head of the wearer, and its practicability doubtful, I incline to the view that it should not bear heavily against the combination in suit. The prior patents cited in the Patent Office, and the additional ones emphasized at the hearing, true enough, embodied one or more of the elements of the combination in suit, but none included the exact combination—none included a flexible container of a flexible material or sheet for folding

the parachute into a compact mass with projecting ends for folding over and fastening thereto a cord to release the pack—and accordingly the claims in suit are for a new combination, and a limitation to a flat sheet of flexible material folded about the parachute is not demanded.

Defendant's lifepack (third type Ex. 1) embodies every element of the claims. Noninfringement, however, is contended because the fabric cover or container for defendant's pack is not of a flat sheet of flexible material but consists of a sheet with bottom corners sewn (upper corners free) to form a boxlike structure. In its pack the edge of the flexible boxlike cover extends about the parachute which is folded on a compact mass and the edges fastened to corresponding edges and fastening means. To open the pack a ring and cord is provided extending to the releasable fastening means. By such means and adaptations in combination the defendant's apparatus in my view infringes claim 1 of the patent in suit. Defendant in its lifepack sold to individuals has also adapted a harness for strapping the pack to the back of the aviator with a releasing device extending from the fastening edges to the front of the harness as in claim 4, and such adaptation in combination is an infringement thereof. Claim 10, embodying means for releasing the fastening means and drawing back the flexible sheet, finds its counterpart in the drawing back of the flaps on defendant's pack by the use of rubber bands. In its construction it also uses a pilot parachute attached to the apex of the main chute—an element of the combination in claim 13—and such adaptation is an infringement thereof. The departure by defendant from the infolding sheet of complainant's patent did not result in a change of function or mode of operation, and, indeed, the precise result of compacting the mass was attained that is attained by the sheet of flexible material around the parachute of the patent in suit. Three parachutes and parachute paraphernalia (third type) concededly have been sold to individual customers by the defendant, and other sales to individuals are contemplated. Infringement of the combination in suit is not avoided by Mr. Irving's testimony that he submitted a boxlike container for his parachute to the government as early as 1918.

[2] It is contended that the Smith patent is invalid because the claims were not supported by any supplemental oath; that the application merely refers to fabric material the sides of which are folded over and meet at the center of the pack, and no reference is made to a sheet of flexible material. But this point is not maintainable under Eagleton Mfg. Co. v. West Mfg. Co., 111 U. S. 490, 4 Sup. Ct. 593, 28 L. Ed. 493, since the original description was sufficient to fairly include a sheet of flexible material, though the exact words were not used and the amendments made were not descriptive of a different invention than the one sworn to. See George Cutter Co. v. Metropolitan Electric Mfg. Co. (decided June 23, 1921 C. C. A. 2d Circuit) 275 Fed. 158.

[3] A motion by the government was made at the beginning of the trial, counsel appearing as amicus curiæ, to dismiss the bill on the ground that the defendant company had built infringing lifepacks for

the United States under contracts and pursuant to specifications supplied by the government and that the government in terms saved the defendant harmless from all demands or liability for the manufacture and use of the patented invention in question. Such appearance and motion, even though the government is not a party to the suit, were proper. Marconi Wireless Tel. Co. v. Simon (D. C.) 227 Fed. 906. It was contended in opposition that the proofs would disclose sales by defendant of infringing types of parachutes to individual customers, and hence the trial was permitted to proceed to final hearing. As to the devices (second and fourth types) constructed under conceded contract with the United States this suit in my opinion would be in effect a suit against the United States, and therefore, as to such constructions, this court is thought without jurisdiction to determine the controversy. See Act of June 25, 1910, as amended by act July 1, 1918 (Comp. St. Ann. Supp. 1919, § 9465).

Complainant, however, insists for an accounting as to profits and damages arising from sales to the government of the infringing apparatus, and also for an injunction as to future contracts with the government for constructions of lifepacks. Such relief, however, in view of the statute and the contractual obligations assumed by the government, is not permissible. Defendant's manufacture in the main has been confined exclusively to supplying parachutes to the government except as to three devices admittedly sold by defendant to individual customers as heretofore stated. Since the lifepacks admittedly are constructed for the government in accordance with specifications found to embody the invention of the patent in suit, the manufacture is in effect a manufacture of the government which uses and appropriates the invention in suit. The amendment of 1918, enlarging the earlier act of 1910, clearly shows that Congress intended that the government should be left free to contract with any one for the manufacture of any article used by it, and if as a result thereof a patented invention is manufactured or used "by or for the United States without license of the owner," such owner's remedy is to recover a reasonable compensation for such use or manufacture in a suit against the United States in the Court of Claims. This determination is based upon an examination of prior decisions construing the original act and in the light of the subsequent amendment of 1918. See Crozier v. Krupp, 224 U. S. 290, 32 Sup. Ct. 488, 56 L. Ed. 771; Marconi Wireless Telegraph Co. v. Simon (D. C.) 227 Fed. 906, affirmed 231 Fed. 1021, 145 C. C. A. 656; Firth-Sterling Co. v. Bethlehem Steel Co. (D. C.) 216 Fed. 755; William Cramp & Sons Ship & Engine Bldg. Co. v. International Curtis Marine Turbine Co., 246 U. S. 28, 38 Sup. Ct. 271, 62 L. Ed. 560.

Accordingly, a decree may be entered herein with costs holding the patent valid and infringed by the defendant as to the three apparatuses manufactured and sold by it to individual customers; but no decree shall be entered holding it accountable for its manufacture under contract with the United States, or to prevent it from carrying out any

existing contract with the United States, or from making further contracts with the United States for the production of such apparatus. So ordered.