**OLSSON v. UNITED STATES.**
No. B–154.

Court of Claims.
May 31, 1938.

Luther E. Morrison, of New York City (C. B. DesJardins, of Washington, D. C., and A. S. Worfolk, of New York City, on the brief), for plaintiff.

Harrison F. Lyman, of Boston, Mass., and Sam E. Whitaker, Asst. Atty. Gen., for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judge.

LITTLETON, Judge.

The indisputable facts of record establish that plaintiff's invention, which is the subject-matter of this suit, possesses patentable novelty and undeniably has commercial utility and advantage over the prior art, and the court so found in the former consideration of the question of validity and infringement (72 Ct.Cl. 72) and in the present proceeding on accounting. The defendant, having adopted and used the invention and obtained the benefits of its advantages, may not now deny its utility. Lehnbeuter v. Holthaus, 105 U.S. 94, 96, 97, 26 L.Ed. 939; United States v. Societe Anonyme Des Anciens Establissements Cail, 224 U.S. 309, 323, 32 S.Ct. 479, 56 L. Ed. 778; Dunkley Co. v. California Canneries et al., 9 Cir., 7 F.2d 972, 976, 977.

The claim of the patent in suit is as follows: "A gun with barrel recoil, a recoil brake arranged in only one radial direction from the axis of the barrel, and a counterpoise placed, diametrically opposite the recoil brake so that the center of gravity of the brake is thereby moved nearer to the axis of the barrel." The recoil mechanism with which the invention in suit directly deals is located below the barrel of the gun. This location of the recoil mechanism is simpler and less expensive to manufacture than other types, and it is protected against damage from hostile fire. Such unsymmetrical location of the recoil mechanism sets up an objectionable turning couple when the gun is fired. This turning couple causes the muzzle of the gun to jump which, in turn, causes a strain on the guides of the gun barrel and undue stresses in the elevating mechanism, as well as the jumping of the gun carriage about its anchoring spade. Plaintiff's patent discloses a form of gun construction in which the recoil brake or mechanism is placed in this position. He provides a combination of elements by virtue of which the objectionable turning couple may be offset or counteracted in whole or in part. He does this by providing a counterpoise or weight attached to the barrel of the gun diametrically opposite to the recoil brake or mechanism. By the use of this counterweight a neutralizing couple is introduced which neutralizes the objectionable turning couple to a degree dependent upon the weight of the counterpoise and its location and distance from the axis of the gun barrel as compared with the weight of the movable part of the recoil mechanism and the distance of its center of gravity from the gun axis. When the counterweight is used, it results in an ultimate saving in weight of the gun and carriage structure and in the cost of manufacture due to the reduction of the stresses and consequent reduction in size and weight of certain portions of the gun mechanism and enables the same accuracy of fire to be realized in a mobile gun with a lighter weight gun carriage and brake mechanism than would otherwise be necessary. The clear preponderance of

evidence in this proceeding on accounting shows that the advantages accruing to the defendant through the utilization of plaintiff's invention in the matter of saving in weight and manufacturing costs, and other advantages of value in use, amount to $171.61 per howitzer on 2,129 155 mm. howitzers manufactured and used or acquired and used by the defendant, and we have so found. The record is voluminous and no useful purpose would be served by a detailed discussion of evidence which establishes the monetary equivalent of these valuable features of plaintiff's invention.

Plaintiff contends for a much greater monetary value for the benefits derived by the defendant from the use of his invention. He claims a monetary value to the Government of $411.90 per howitzer by reduction in weight and a saving in cost of $487.13, which amounts, he insists, constitute the reasonable monetary value of $899.04 per howitzer. This claimed value for the benefits derived from use of the invention in suit is not sustained by the evidence.

■ It is contended on behalf of the defendant that there has been no infringement for which compensation can be recovered as to 1,503 howitzers embodying plaintiff's invention for the reason that these howitzers were not, prior to the filing of the petition, completely assembled in the United States and that even if they were assembled they have not been actually used. In our opinion the record clearly establishes the use of these guns in the sense in which national armaments are generally used in times of peace for national defense. They were acquired and have been preserved and held in storage for actual use for the purposes for which they were acquired, designed, adapted, and intended to be used. Since their acquisition, no occasion has arisen for any greater use than that for which they have been and are being held. In the circumstances we think it is clear that there has been use within the meaning of the act of June 25, 1910, as amended by the act of July 1, 1918, 35 U.S.C.A. § 68. The evidence shows that a large number and possibly all of the 1,503 guns acquired from France were completely assembled in the United States after their arrival from France and before they were partly disassembled for convenience in storing for use when and as needed, but we think it was not necessary to

constitute a use for which compensation may be recovered for the barrels to be placed upon the carriages and the guns to be actually used in firing practice in peacetime or used in the United States in time of war. The evidence clearly shows that in 1917 the defendant adopted the 155 mm. infringing howitzers for the standard or regulation howitzer for the United States Army; that 1,503 of these howitzers were purchased from France and were brought to the United States in 1919. In addition 626 155 mm. infringing howitzers were manufactured by or for the defendant in the United States at a cost of more than $10,000,000 and that some of these United States infringing howitzers were issued to troops stationed in the United States. The evidence further shows that the program for the manufacture of the howitzers in the United States had it been carried through to completion would have required the expenditure of more than $68,000,000; that prior to the adoption of the infringing howitzers the United States had manufactured and used a 6-inch howitzer of a different design that did not infringe plaintiff's invention, which howitzers could have been produced in the United States if desired; that this 6-inch non-infringing howitzer of the defendant's own design was discarded by the United States as unsatisfactory and was replaced by the infringing 155 mm. howitzer which had withstood the tests of war and had proven in every way to be superior to all other howitzers of the same or similar caliber and that all of the 2,129 complete 155 mm. infringing howitzers manufactured in the United States and purchased from France by the United States have, since 1919, formed a part of the national armament of the United States and are the only howitzers of that or similar caliber which the United States then had or now has on hand and held for use, and intended to be used, for the national defense. All of the 2,129 155 mm. infringing howitzers are held and maintained by the United States in the best possible condition so that they may be further used in any manner and for any purpose desired, and be issued to troops at any time when and as desired or required and be immediately available in the event of a national emergency. All of the 155 mm. infringing howitzers purchased by the United States from France were upon arrival at the place of storage in the United States properly treated for preservation for further use

and placed in storage there, to be held at all times available for their normal and intended use for national defense in time of peace or in the event of a national emergency. Although held in storage in a convenient form for proper preservation the guns were, after being brought to this country, employed for the accomplishment of a purpose, i. e., the purpose of national defense. In these circumstances we think it is clear that there has been a "use" in the United States of plaintiff's invention for which he is entitled to recover compensation. Peabody v. United States, 231 U. S. 530, 538, 34 S.Ct. 159, 58 L.Ed. 351. The "use" contemplated by the acts of June 25, 1910, and July 1, 1918, was an appropriation by the United States, or some official acting in its behalf, of a right or license secured to a patentee and the employment of the invention to a public purpose or the embodiment of the invention in articles designed and intended for the promotion of a public purpose or undertaking. In Crozier v. Fried Krupp Aktiengesellschaft, 224 U.S. 290, 304, 32 S.Ct. 488, 491, 56 L. Ed. 771, the court said: .

"In other words, the situation prior to the passage of the act of 1910 was this: Where it was asserted that an officer of the government had infringed a patent right belonging to another,—in other words, had taken his property for the benefit of the government,—the power to sue the United States for redress did not obtain unless, from the proof, it was established that a contract to pay could be implied,—that is to say, that no right of action existed against the United States for a mere act of wrongdoing by its officers. Evidently inspired by the injustice of this rule as applied to rights of the character of those embraced by patents, because of the frequent possibility of their infringement by the acts of officers under circumstances which would not justify the implication of a contract, the intention of the statute to create a remedy for this condition is illustrated by the declaration in the title that the statute was enacted 'to provide additional protection for owners of patents.' To secure this end, in comprehensive terms the statute provides that whenever an invention described in and covered by a patent of the United States 'shall hereafter be used by the United States without license of the owner thereof or lawful right to use the same, such owner may recover

reasonable compensation for such use by suit in the court of claims.' That is to say, it adds to the right to sue the United States in the court of claims already conferred when contract relations exist, the right to sue even although no element of contract is present. And to render the power thus conferred efficacious, the statute endows any owner of a patent with the right to establish contradictorily with the United States the truth of his belief that his rights have been, in whole or in part, appropriated by an officer of the United States, and if he does so establish such appropriation, that the United States shall be considered as having ratified the act of the officer, and be treated as responsible pecuniarily for the consequences. * * * The adoption by the United States of the wrongful act of an officer is, of course, an adoption of the act when and as committed, and causes such act of the officer to be, in virtue of the statute, a rightful appropriation by the government, for which compensation is provided. In substance, therefore, in this case, in view of the public nature of the subjects with which the patents in question are concerned and the undoubted authority of the United States as to such subjects to exert the power of eminent domain, the statute, looking at the substance of things, *provides for the appropriation of a license to use the inventions, the appropriation thus made being sanctioned by the means of compensation for which the statute provides.* (Italics supplied.)

On the question as to the amount of the reasonable and entire compensation to which plaintiff is entitled under the act of June 25, 1910, as amended by the act of July 1, 1918, by reason of the appropriation by the United States of the right or license to use plaintiff's invention for which it has assumed, by the provisions of the act of June 25, 1910, an obligation to compensate the plaintiff for the value to him of the right or license so appropriated, we think it is clear, under the facts and circumstances of this case, that plaintiff is not entitled to recover as his reasonable compensation the entire monetary value of the savings and advantages which accrued to the defendant by reason of the utilization of his invention on the 2,129 complete infringing howitzers in question. The compensation to which plaintiff is entitled under the act of June 25, 1910, as amended by the act of July 1, 1918, is the fair and

reasonable value to him of the property right or license appropriated by the Government. Crozier v. Fried Krupp, 224 U. S. 290, 297–308, 32 S.Ct. 488, 56 L.Ed. 771. The purpose of the act of June 25, 1910, and its provisions placed all patentees whose inventions had been used by the United States in the same position with reference to the right to sue and as to the measure of compensation for the appropriation by the United States of a right or license to use the invention. After June 25, 1910, the distinction theretofore made as to the right to sue, the basis for recovery, or the measure of compensation, between patentees whose inventions had been intentionally used by the United States with the patentee's consent and patentees whose invention had been appropriated and used without their consent, no longer existed. On and after the date mentioned, the basis fixing the amount to be paid for the use has been an implied agreement by the United States to pay reasonable and entire or just compensation for the value to the patentee of the property right or license appropriation by the United States. In Mamie C. Wood, et al. v. United States, 36 Ct.Cl. 418, 426, decided May 20, 1901, this court said:

"But this court, in the leading Case of McKeever (14 Ct.Cl. 396; affirmed by the Supreme Court, see 18 [Ct.Cl.] 757), laid down a sufficient rule for such cases. The question to be determined is, What was the invention worth in the market? What would the parties have taken and paid if the matter had come to an express agreement? What would any person needing the invention have been willing to pay for it?

"Where a man tortiously infringes, all that he makes or saves by his wrongful act belongs to the patentee. Where he sells a right to manufacture or use his patented invention and sues in contract, his damages are what the defendant expressly agreed to pay or what the license express or implied, is reasonably worth."

In the circumstances of this case we need not discuss the well-established rules with reference to the measure of damages or compensation for infringement or unauthorized use of a patented invention where there is a market price for the patented device or combination or where the patentee is, himself, engaged in the manufacture or sale of the patented device or process, or where there exists an established royalty or license fee for the use of the invention. The rule to be applied in measuring the compensation depends upon the facts and circumstances of each case, but the end to be obtained in every case is always the same, namely, the determination and allowance of just compensation to the patentee for the value to him of the right or license to use appropriated by the Government. Richmond Screw Anchor Company v. United States, 275 U.S. 331, 48 S.Ct. 194, 72 L.Ed. 303. The Berdan Fire-Arms Manufacturing Company v. United States, 26 Ct.Cl. 48, 82. In the case at bar plaintiff did not manufacture guns embodying his invention, nor did anyone else manufacture and sell guns embodying his invention under a royalty or license agreement. The United States did not manufacture or acquire the infringing guns for sale. It does not in any case manufacture articles for sale at a profit. There have, therefore, been no profits in a commercial sense made in the manufacture and sale of plaintiff's invention which might be considered in connection with the determination of the value to him of the use of his invention. Moreover, the record fails to show that plaintiff was able, financially or otherwise, to design and manufacture, or have designed and manufactured, guns embodying his invention which he could have sold to the United States for any determinable profit. He had no existing patent monopoly in any country, except the United States. His patent was not one of general commercial value. The value to the plaintiff of his invention, therefore, resided chiefly in the possibility of its use by the United States in combination with a complete cannon. In these circumstances the value of plaintiff's property right which was appropriated by the United States, and therefore the reasonable and entire compensation to which he was entitled for the use of his invention, must be an amount which the United States ought to have paid him, or would probably have been willing to pay, for a license to use his invention by reason of its utility and the several advantages accruing to the United States by reason of its embodiment in the guns in question. We think it is clear that the value of this property right of plaintiff, for which he could have demanded and obtained compensation, was less than the total monetary value of the savings and advantages to the

United States by reason of such use. Plaintiff was not in a position to manufacture and sell, or have manufactured and sold, to the United States complete guns embodying his invention which would be acceptable to the United States. Through the use by the United States of plaintiff's invention on the guns which it designed and manufactured or acquired at its own expense, plaintiff was relieved of the trouble, expense, and responsibility of manufacture and sale. In these circumstances it seems clear that plaintiff's reasonable and entire compensation paid contemporaneously with the appropriation of the use of his invention was only a percentage of the monetary value of the advantages accruing to the United States by reason of such use. The United States was entitled to claim the benefit of a large portion of the value of the savings in cost and other advantages by reason of its assumption of the care, trouble, risk, expense, and responsibility attending the incorporation of the invention in suit into an acceptable design and the manufacture of the guns. Cf. United States v. Speed, 8 Wall, 77, 84, 85, 19 L.Ed. 449. The United States itself paid $560,000 for the design and working drawings for the 155 mm. infringing howitzer. "There is no presumption, either of law or fact, that the plaintiff has lost all that the defendant has gained, or that the defendant's advantage is equal to the plaintiff's loss. But the pecuniary benefit which the defendant has derived from the unlawful use of the invention, whether by an increase in the quality of his products and the quantity of his sales, or by a decrease in the expense of manufacture, is a fact from which, in connection with other facts, the jury may infer the amount by which the plaintiff's sales and prices have been reduced through the infringement." Robinson on Patents—Vol. III, Section 1062.

Upon the record in this case, we are of opinion that 25 percent of $289,999.90—the total monetary value of the utility and advantages to the government—or the sum of $72,499.98 constitutes a reasonable and entire compensation to plaintiff for the use by the United States of his invention. To this amount must be added the reasonable sum of $68,942.24 measured by interest at 5 percent per annum on $26,856.97 from February 1, 1919, to May 31, 1938, and interest at the same rate on $45,643.01 from July 31, 1919, to May 31, 1938, in order to make plaintiff's compensation "entire." Waite v. United States, 282 U.S. 508, 51 S.Ct. 227, 75 L.Ed. 494.

Plaintiff is entitled to recover and judgment will be entered in his favor for $141,442.22 with interest at 5 percent per annum on $72,499.98 thereof, not as interest but as part of the "entire compensation", from May 31, 1938, until paid. It is so ordered.