**FAUBER v. UNITED STATES.**

No. 41941.

United States Court of Claims.

Dec. 6, 1948.

C. Willard Hayes, of Washington, D. C. (Arlon V. Cushman, John J. Darby, William M. Cushman, and Cushman, Darby & Cushman, all of Washington, D. C., on the brief), for plaintiff.

C. P. Goepel, of New York City, and H. G. Morison, Asst. Atty. Gen. (E. R. Weisbender, of Washington, D. C., on the brief), for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, HOWELL and MADDEN, Judges.

LITTLETON, Judge.

This suit was brought under a special act of Congress waiving the statute of limitation, to recover reasonable and entire compensation under the Act of June 25, 1910, as amended, 35 U.S.C.A. § 68, for the unauthorized manufacture and use by defendant of certain patented inventions granted to William H. Fauber. Two patents and several of the claims of each were sued upon. We found and held in the initial proceeding on validity and infringement, 37 F.Supp. 415, 93 Ct.Cl. 11, that claim 4 of patent 1,024,682 was valid and had been infringed and that the other claims sued upon were either invalid or had not been infringed. This patent is directed to and teaches the use of a boat hull provided with hydroplane surfaces which are downwardly and rearwardly inclined and act on the water to lift the hull and lessen its submerged area (findings 3, 4 and 5).

In this proceeding plaintiff contends for the allowance of compensation of $472,992 on the basis of a reasonable royalty of 8% of the cost per hull for 2,354 hulls manufactured and used by defendant, but this claim for an 8% royalty is not sustained by the evidence of record. (See findings 15–21.)

Upon the report of the Commissioner and the record on accounting, we have found that there were manufactured by or for the defendant and used by it 2,354 infringing hydroplane hulls for use in connection with hydroairplanes, and that a fair and reasonable figure or royalty upon which to base the compensation which should have been paid to plaintiff at the time of manufacture and use is one and one-half percent of the cost per hull, or a total of $88,686. We have further found that the reasonable and entire compensation due plaintiff consists of this sum together with an additional amount, as part of entire or just compensation, measured by a reasonable interest rate of 4% per annum on the annual amounts, computed at 1½% of cost, set forth in the last column of the tabulation in finding 24. Waite v United States, 282 U.S. 508, 51 S.Ct. 227, 75 L.Ed. 494.

Defendant's counsel make seven contentions in opposition to plaintiff's right to recover which, we think, are without merit, but which warrant some discussion. It is first contended that the Commissioner was without power or authority on the reference for accounting to determine the compensation due plaintiff, to consider twenty-six types of structures as infringements of claim 4, in addition to the three types considered and discussed on the first hearing which was limited to validity and infringement. This contention is contrary to the well-recognized rule followed in such cases. Flat Slab Patents Co. v. Turner, 8 Cir., 285 F. 257, 272; Marconi Wireless Tel. Co. v. United States, 99 Ct. Cl. 1, 63; Esnault-Pelterie v. United States, 81 Ct.Cl. 785, 811; A. B. Dick Co. v. Marr, D.C., 48 F.Supp. 775, 778. The obvious intent and purpose of Rule 39, Rules of the Court of Claims, 28 U.S.C.A., include the authority complained of and the fact that the second order of reference in this case did not expressly so state is of no importance.

The judgment of the court on the validity and infringement phase of the case was that claim 4 of the second Fauber patent was valid and infringed and that plaintiff was entitled to recover, but entry of judgment would be withheld until the taking of evidence on accounting.

Reference was then made to the Commissioner to determine the amount of compensation due. This the Commissioner proceeded to do by permitting both parties to present evidence as to similarity or nonsimilarity of the group of hydroplane hull structures with the three hull structures found to infringe claim 4. This was clearly the correct procedure.

To limit the Commissioner to the exact type or model designation of the structures selected by the court as an index of infringement and to force plaintiff to present to the court each and every individual accused structure in the initial phase of his patent case would vitiate the purpose of Rule 39, which is to save time and expense.

In giving the parties opportunity to present evidence as to the similarity or dissimilarity of certain other types of structures with the three here selected by the court as indices of infringement, the Commissioner merely followed the usual accounting procedure. In Flat Slab Patents Co. v. Turner, supra [285 F. 272] the court said: "* * * An unreal divergence sometimes seems to appear where the defendant has also used a construction differing from the precise one covered by the evidence in the infringement trial. This proposition is loosely expressed as being whether the new construction is an infringement. A more accurate statement would be that it is whether the new construction is within what the decree has declared to constitute an infringement. * * * The problem of the master, therefore, in ascertaining whether a new construction is to be covered by the accounting, becomes one of comparison between that construction and the one declared to infringe. This comparison is along the line of infringing elements or features. The identity of such elements or features and the respect in which they constitute infringements can be found by the master sometimes in his report or more often in his opinion which may be treated as an explanation of the report. * * *"

In the accounting procedure the defendant had ample opportunity to present proof as to dissimilarity of the then considered structures with what the court had indicated as a measure of infringement, and it did so. Defendant's statutory rights were in no way affected or barred by such procedure. The evidence offered fully supports the Commissioner's finding, which we have adopted, as to the number of infringing structures manufactured and used by defendant.

The second argument of defendant made for the first time on the accounting hearing, is that there are noninfringing differences between the structures actually manufactured and used and the drawings or preliminary models thereof.

The drawings used in the determination by the court of the question of infringement as to the type HS hull and the NB-1 float (plaintiff's exhibit 14) were filed by defendant in response to a call issued by the court on the Navy Department. The information accompanying them was as follows:

So far as the HS-1-L and HS-2-L types are concerned, the hulls of these types are identically represented by the lines of the tank model shown in Bureau of Construction and Repair Plan No. 467.

The floats of the NB-1 seaplanes are clearly represented by Bureau of Aeronautics Plan No. 3863.

Tracings in exact agreement with these drawings were further filed in a stipulation dated April 22, 1939, in which it was agreed by the parties that the drawings forming a portion of such stipulation were, respectively, accurate tracings of the HS or HS-1 seaplane and the NB-1 float.

In the accounting phase some ten years after the response of the Navy Department (the hearing having been, upon defendant's motion, suspended during the war), certain evidence is introduced by defendant, through Captain Richardson, who was the defendant's chief expert in the prior phase of this case, and upon this evidence defendant urges in its brief that "The accounting proofs have established that the structures (NB-1 and HS-1-L) supplied to and used by the defendant, differ from the drawings of the tank models (NB and HS) passed upon by this Court, * * *." In the accounting hearing the defendant produced a drawing to show a construction assembly of the HS-1-L. Prior to its offer in evidence Government counsel stated on the record that "It is a duplicate drawing of plaintiff's exhibit 14."

When this drawing was subsequently offered in evidence plaintiff objected to it if it was intended to show something different from the drawings furnished by the Navy (drawing No. 467), and defendant's counsel was asked: "Is this new drawing offered to show something different?", to which he replied, "No, identical to the extent that they appear. We are not questioning the drawing 467." The Commissioner further inquired of defendant's counsel, "Are you in any way questioning the drawings furnished by the stipulation of April 22, 1939?", to which counsel replied, "No, Your Honor, they are exactly duplicate."

For counsel to introduce in evidence a drawing on the basis that it is an exact duplicate of a former stipulated drawing and subsequently to argue that they are different is not procedure ordinarily expected.

Captain Richardson's testimony was to the effect that in the prior drawing the bottom lines of the aft section were so small that their curvature was undetectable until a straight edge is applied and then a slight curvature is seen, and that such curvature is more evident on the new drawing.

■ Even accepting the new drawing and Captain Richardson's testimony at full face value, the fact remains that although Captain Richardson was in charge of the construction of the HS type of hull during the period when it was built, it has taken defendant several years to find out that the rearward hydroplane surfaces had a very slight curvature instead of being flat. This, however, is of no importance to the question of infringement. Claim 4 in issue is not limited to flat hydroplane members, and the distinction which defendant now attempts to make is, therefore, of no moment.

With respect to the NB-1, the defendant points out that certain cross-sections of the bottom of the forebody immediately forward of the step possess the same angle as certain sections of the afterbody aft the step and adjacent thereto, and the angle being the same at this point defendant urges noninfringement.

This entirely overlooks the second paragraph of finding 34 of the court in its original opinion, which states with reference to the NB-1 float that "The V section of the forward surface is more pronounced than the V section of the after surface and flattens toward the step. * * * The terminology of claims 1, 4 and 29 of the second patent in suit is applicable to this structure."

Finding 12 of the Commissioner on accounting, to which the defendant objects as a new finding of law, simply restates our former finding in different phraseology.

As to the duty of the Commissioner to make such a finding when he believes it to be supported by the evidence, attention should be called to the case of United

**222**

States v. Esnault-Pelterie, 299 U.S. 201, 205, 57 S.Ct. 159, 161, 81 L.Ed. 123, in which the court said: "Validity and infringement are ultimate facts on which depends the question of liability. In actions at law they are to be decided by the jury."

■ The third contention of defendant is that plaintiff has not proven the fact of loss and cannot, therefore, recover. Plaintiff has submitted proof to show the value of the invention. It is not essential that plaintiff should show an actual loss of money through defendant's infringing acts. The owner of a patent has been granted a monopoly upon the thing designated by the claims of the patent, and one who wrongfully appropriates his property by the invasion of that monopoly must compensate the owner of the patent for such invasion.

■ The Patent Act of June 25, 1910, provides for reasonable and entire compensation to the owner of the patent when his rights have been invaded by the United States, irrespective of whether he has manufactured or sold devices in accordance with his invention.

The fourth argument is (1) that plaintiff must apportion the cost of the hulls to the aft sections thereof which infringed claim 4, and (2) that plaintiff cannot recover on the prior art. There is evidence relative to apportionment, and proportioning of the value of Fauber's contribution to the art has been fully considered by the Commissioner and the court in arriving at reasonable compensation of 1½% of the cost of each hull. (See findings 23 and 24.) The second argument in this proceeding as to prior art is based upon an article written by A. E. Long, in June 1908, and introduced in evidence. This article was first brought forward in a motion for a new trial and after making four findings with reference thereto the court rejected it as an anticipation of claim 4. We now find, again, that the article contributes nothing in mitigation of the use by defendant of the Fauber invention as defined by claim 4 of patent 1,024,682. (See finding 22.)

The fifth contention of defendant is that plaintiff is not entitled to interest on the value of the Fauber invention which the Government appropriated and has used over a number of years. Interest, as such, has never been allowed in cases such as this, but under the decision in Waite v. United States, supra, the reasonable and entire compensation provided by the Act of 1941, as amended, 35 U.S.C.A. § 68, to a patentee includes a sum in addition to the value or reasonable royalty at the time of the appropriation and use of his invention, which, for convenience, is customarily measured and calculated at a reasonable rate of interest from the date or dates of the infringing acts. This additional amount is not added as interest but is allowed in order to make the compensation to the patentee entire or just, under the statute which authorized suit and assumed an obligation to pay reasonable and entire compensation whenever the Government manufactured or used a patented invention without the payment of compensation contemporaneously with such appropriation. Cf. Crozier v. Krupp, 224 U.S. 290, 304, 32 S.Ct. 488, 56 L.Ed. 771; Olsson v. United States, 25 F.Supp. 495, 87 Ct.Cl. 642; Royalty Adjustment Act, October 31, 1942, 35 U.S.C.A. §§ 89, 90; Air Corps Act of July 2, 1926, as amended by the Act of March 3, 1927, 10 U.S.C.A. § 310(i).

Defendant next contends that plaintiff's proof and the Commissioner's findings, which we find to be in accordance with and fully sustained by the best evidence of record, are not sufficient to sustain plaintiff's alleged cause of action. In this contention defendant criticizes the findings as to royalty rates under license agreements (findings 15–21), insisting that the Elco license is irrelevant; that the Commissioner made new interpretations of claim 4, and that the findings fail to set forth circumstantial facts relating to the additional structures (hereinbefore referred to) charged to infringe claim 4. We think these objections are not well-taken. The Elco license is relevant and material as affording a basis with other evidence in the case upon which reasonable and just compensation can be determined. We find from a study of the Commissioner's findings and the record that no new

interpretations of claim 4 have been made. We find from a study of the record that the relevant circumstantial and ultimate facts relating to the construction of the twenty-six additional structures charged to infringe claim 4, are adequately set forth in finding 5 and further in findings 6–14.

The last contention of defendant is that the patent involved is void because it fails clearly to set forth the principle of the invention. We are of the opinion that his argument is without merit. Moreover, the present questions are limited to accounting, and the validity of claim 4 is not in issue. This court in special findings of fact and opinion held claim 4 valid, and defendant's motion for a new trial thereafter filed on the question of validity was considered and overruled.

Plaintiff is entitled to recover, and judgment in her favor is entered for $88,686 together with an additional amount to be added thereto, measured by a reasonable rate of interest of 4% per annum beginning January 1, 1918, and calculated on the several amounts set forth in the last column of finding 24. This additional amount is allowed not as interest but as a part of entire and just compensation.

JONES, Chief Judge, and HOWELL and MADDEN, Judges, concur.

WHITAKER, Judge, took no part in the decision of this case.