VAN WELL NURSERY, INC., a Washington Corp., Hilltop Nurseries, LLC, a Michigan limited liability company, Plaintiffs,

v.

MONY LIFE INSURANCE COMPANY, a New York corporation; A/B Hop Farms, Inc., a Washington corporation; Bennett G. Brulotte and Tracy A Brulotte, individually and their marital community; Walla Walla Parcel No. 31–07–23–11–00–02 Defendants.

Mony Life Ins. Co., a N.Y. Corp., Third–Party Plaintiff,

National Licensing Assoc., LLC., a Washington limited liability company (f/k/a Nursery Licensing Association, LLC), Third–Party Defendant.

No. CV–04–0245–LRS.

United States District Court, E.D. Washington.

Jan. 24, 2005.

Wes L. Gano, Stratton Ballew PLLC, Yakima, WA, for Plaintiffs.

Charles R. Ekberg, David Tait Hunter, Lane Powell Spears Lubersky LLP, Seattle, WA, Roger William Bailey, Carlson Boyd & Bailey PLLC, Yakima, WA, for Defendants.

## ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING DEFENDANT MONY LIFE'S CROSS–MOTION FOR PARTIAL SUMMARY JUDGMENT

SUKO, District Judge.

BEFORE THE COURT are Van Well Nursery's Motion for Partial Summary Judgment against Defendant Mony Life Insurance (Ct.Rec.25) regarding patent infringement liability and Mony Life's cross Motion for Summary Judgment of Noninfringement (Ct.Rec.41). On January 20, 2005, the Court heard argument on these motions. Plaintiff Van Well Nursery was represented by Rex Stratton, Patrick Ballew, and Quinten Bowman. Defendant Mony Life Insurance was represented by David T. Hunter. Having carefully considered the arguments of counsel and the papers submitted, the Court hereby **DENIES** Van Well's Motion for partial summary judgment and **GRANTS** Mony Life's cross motion for (partial) summary judgment.

## I. FACTS

On July 9, 2004, Van Well Nursery (hereinafter "Van Well"), in conjunction with Hilltop Nurseries, filed this action against Mony Life Insurance (hereinafter "Mony Life"), an agricultural lending institution, and others, alleging claims for patent infringement under 35 U.S.C. § 271(a); inducement of patent infringement under 35 U.S.C. § 271(b); trademark infringement, false designation of origin, trade-mark counterfeiting under 15 U.S.C. §§ 1114 and 1125(a); and a violation of the Washington Consumer Protection Act under RCW § 19.86.010. The instant motions only involve parties Van Well and Mony Life.

The patent in suit, United States Patent No. 4,839 (hereinafter "the '839 patent"), filed on May 9, 1980, protects what is described as a new variety of "spur-type Red Delicious" apple tree.[1] The patent reflects it was issued on April 20, 1982 with Van Well Nursery, Inc., as assignee of the inventors, William Evans and Don Snipes. Van Well Nursery sells the patented trees to the public.

In March 1980, A/B Hop Farms, Inc., was formed by the Brulotte family. In 1984, A/B Hop Farms purchased and planted 24,000 '839 patented trees from Van Well Nursery.

On May 2, 1991, Mony Life made its first loan to A/B Hop Farms, Inc., Sand Turtle, Inc., and individual Brulotte family members ("the mortgagors") in the amount of $4,250,000. Thereafter, Mony Life made five additional loans to them:

| No. 12004 | $1.6 million | April 16, 1993 |
| No. 612125 | $700,000 | February 28, 1995 |
| No. 612126 | $1.8 million | February 28, 1995 |
| No. 612004 | $2.5 million | February 21, 1996 |
| No. 811682 | $4.9 million | June 4, 1998 |

On February 15, 1996, Doris I. Brulotte purchased the "Wallula Orchard Properties" from Donald and Lori Watts. That property was conveyed on February 20, 1996 to Arnold and Bennett Brulotte. The $2.5 million loan from Mony Life on February 21, 1996 was secured by the Walulla Orchard Properties.

---

1. Plaintiff describes the variety of tree protected by the patent the "Snipes cultivar." Scarlet Spur (and its derivations) is a designation also used to identify the cultivar of tree described in the '839 patent.

It is the provisions of this mortgage agreement upon which Van Well rests its theory of liability. Mony Life denies liability and asserts this is a "standard" agricultural lending agreement. To secure the payment of the $2.5 million dollar loan, the agreement provides that the mortgagor "mortgages, assigns and warrants" to Mony Life the Wallula land together with numerous other interests including for example the buildings, improvements, fixtures, permanent plantings, crops and other farm products, rents, profits, income and proceeds therefrom, contract rights, water rights, all judgments, awards of damages, settlements and payments made for any taking of the property or damage to the property, and a security interest in all irrigation, frost control and orchard cooling facilities. The agreement also included terms and conditions requiring the mortgagors not to commit waste or otherwise impair the value of the land, to maintain the properties in good condition, and to restore any fixture which was destroyed or damaged. The mortgagors also agreed "not to remove, damage, or demolish any building, fixture, or improvement thereon" (or not to cause such to occur). The agreement provides that if the mortgagor pays its indebtedness and performs all covenants in the agreement, then the conveyances contained therein are null and void. If the mortgagor were to breach the agreement or fail to make a payment, then the agreement provides recourse for Mony Life to protect its security interests, including if necessary, the authorization to enter upon the property at all reasonable times.

Subject to the terms and conditions of the financial agreement, the individually named mortgagors retained title to the properties and exercised exclusive control over the properties until the effective dates of the deeds in lieu of foreclosure. Based on the records and filings in this case, at no time material to this lawsuit did Mony Life ever instruct anyone to act on its behalf, become involved with, suggest, or direct which specific types, species or varieties of crops or fruit were, could, should, or couldn't be grown on the subject properties, nor did any of the agreements permit Mony Life to do so. Mony Life did not control or direct the day to day operations on the Wallula Orchard Property.

After acquiring the property, the Brulottes apparently planted an additional 120 acres of red delicious trees. It is disputed whether these were infringing trees or not. Mony Life points out that there is no genetic evidence in the record that these trees are/were in fact '839 cultivar infringing trees. Van Well argues there is reliable evidence these trees were patent infringing trees as the Brulottes asserted so in the form of a federal crop insurance map. A January 3, 1996 appraisal report of the Wallula Orchard Properties prepared by Kit L. Carson reflects an existing 80 acres of "Scarlet II Red Delicious 5' × 15' density, planted *Spring 1995*," which would have been prior to the Brulotte's acquisition of the property. The appraisal also indicates an additional 220 acres of Scarlet II and Smoothie Golden Delicious "to be planted" Spring 1996. No source for the trees is indicated with respect to the existing or planned orchards.

On May 9, 2000, the '839 patent expired through operation of 35 U.S.C. § 154.

On November 27, 2001, Mony Life took possession of the A/B Hop Farms properties, including the Wallula Orchard Properties through a statutory deed in Lieu of Foreclosure after A/B Hop Farms defaulted on its loans.

## II.  LEGAL STANDARD

"Summary judgment is as appropriate in a patent case as in any other." *Barmag Barmer Maschinenfabrik AG v. Murata Machinery, Ltd.*, 731 F.2d 831, 835 (Fed.

Cir.1984); *accord Avia Group Int'l, Inc. v. L.A. Gear California, Inc.,* 853 F.2d 1557, 1561 (Fed.Cir.1988). Under Federal Rule of Civil Procedure 56, summary judgment may be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Summary judgment may only be granted, however, where the moving party demonstrates that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Avia,* 853 F.2d at 1560.

To survive the motion, the nonmoving party need only present enough evidence upon which a jury might reasonably return a verdict in its favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986); *C.R. Bard, Inc. v. Advanced Cardiovascular Sys., Inc.,* 911 F.2d 670, 672–73 (Fed.Cir. 1990). Although the Court will view all evidence in the light most beneficial to the nonmovant and resolve any justifiable inferences to be drawn from the facts in favor of the nonmovant, *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513; *Avia,* 853 F.2d at 1560, the nonmovant cannot rest its defense on allegations, speculation, or a mere fragment of evidence. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987); see *Anderson,* 477 U.S. at 249–50, 252, 106 S.Ct. at 2510–11, 2512; *Avia,* 853 F.2d at 1560. In other words, "a nonmovant must do more than merely raise some doubt as to the existence of a fact; evidence must be forthcoming from the nonmovant which would be sufficient to require submission to the jury of the dispute over the fact." *Avia,* 853 F.2d at 1560.

## III. DISCUSSION

### A. Nature of the Claims Raised and Third Party Liability Theories

Patent infringement under 35 U.S.C. § 271 can take place directly (§ 271(a)), by acts of inducement (§ 271(b)), or by acts of contributory infringement (§ 271(b)). Van Well has moved for summary judgment on the narrow issue of direct infringement of the '489 patent.[2] Mony Life has moved for summary judgment on its claim of noninfringement. Van Well has expressly abandoned any claim for liability for patent infringement based upon theories of induced infringement (i.e. indirect infringement pursuant to 35 U.S.C. § 271(b)) or vicarious liability based upon the allegedly infringing acts of A/B Hop Farms, Inc.[3]

---

**2.** The introduction in Van Well's Statement of Facts states that through its motion for partial summary judgment Van Well seeks:

1) Judgment that defendants infringed U.S. Plant Patent No. 4, 839;

2) Judgment that U.S. Plant Patent No. 4, 839 was not invalid during its term of April 20, 1982 to May 9, 2000 and is enforceable;

3) An injunction requiring destruction of the infringing trees; and

4) Judgment that defendant's infringement was willful and that this is an exceptional case justifying an award of attorney's fees and costs. However, Plaintiff's motion only speaks to the first issue, and specifically to the issue of *direct patent infringement* under 35 U.S.C. § 271(a).

**3.** Plaintiff's Reply in Support of Summary Judgment states, "MONY is not liable for acts committed by A & B Hop Farms. Rather MONY is liable for its own acts and its own lending instruments. Plaintiff does not pursue a theory attaching the infringing acts of A/B Hop Farm's liability to MONY...MONY is not liable here for inducing infringement or, vicariously, for the acts of its debtor."

The Court notes that in briefing the issues presented here Mony Life has characterized Van Well's argument as one of vicarious liability. Van Well has expressly indicated it does not claim, nor did it raise in the complaint, the theory that Mony Life is vicariously liable for patent infringement. However, the Court understands Mony Life's characterization of Van Well's theory as one of vicarious liability because it is focused on the extent of *control* Mony Life received in the mortgage instrument, and as raised in oral argument, Mony Life's alleged ability to police the infringing conduct and the alleged financial *benefit* it earned in the infringing activities. While the lines between the various theories of patent infringement are not always clearly drawn, the Court views direct infringement and vicarious liability as distinct theories: whereas vicarious liability, inducement, and contributory infringement are theories of third party liability, direct infringement is not. Nevertheless, because Van Well did allege in it's complaint the theory of contributory infringement, *see Complaint at ¶¶ 27, 32,* and because Van Well seeks summary judgement in its favor for noninfringement, the court will briefly address the theories of vicarious liability and contributory infringement.

■ At the outset, the Court notes the relevant time frame in which infringing acts could give rise to a right to recover damages in this case is from July 9, 1998, six years prior to the filing of the complaint, to May 29, 2000, the date the patent expired. *Standard Oil Co. v. Nippon Shokubai Kagaku Kogyo Co., Ltd.,* 754 F.2d 345 (Fed.Cir.1985). During this time frame Mony Life, the mortgagee, and the Brulottes (A/B Hop Farms, Inc. et al.), the mortgagors, were operating pursuant to the terms of a mortgage agreement pertaining to the Wallula Orchard property. Mony Life did not take possession of the property in question until November 27, 2001, at which time the patent was expired and all rights to enforce the patent had ceased.

■ Contributory infringement liability arises when one "offers to sell or sells within the United States ... a component of a patented machine ... knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use." 35 U.S.C. § 271(c) (2000). Because there is no evidence that Mony Life ever offered to sell or sold any of the infringing trees during the relevant time period, any claim for contributory infringement must fail.

■ In order to prove vicarious liability for the mortgagor's alleged direct infringement, Van Well would have to prove Mony Life exercised "sufficient control." See *L.A. Gear, Inc. v. E.S. Originals, Inc.,* 859 F.Supp. 1294, 1299 (C.D.Ca.1994); 4 Donald S. Chisum, Patents § 16.02[4] (1993). Other than the mortgage agreement itself, however, there is no affirmative evidence in the record which supports this theory. Inasmuch as mortgage agreements do not in and of themselves create an agency relationship, any claim for vicariously liability would be unavailing.

## B. Direct Infringement

■ Direct infringement occurs when someone "without authority makes, uses or sells any patented invention[ ] within the United States during the term of the patent therefor." 35 U.S.C. § 271(a).

Van Well is not claiming that Mony Life "made" or "sold" any of the infringing trees. Accordingly, the sole question is whether there is reasonable evidence that Mony Life "used" the patented trees. It is Van Well's position that Mony Life is liable under what it dubs a "constructive use"

theory supported solely by the terms of the lending documents utilized here. Van Well states its theory of liability is not predicated upon what Mony Life "says it did or did not do with respect to control over the farming activities of its borrow [sic], but the rights that it demanded and was assigned in its mortgage." Specifically, it is alleged Mony Life has unlawfully "used" the patented trees by taking a mortgage/security interest in the allegedly infringing trees coupled with "the right to farm the property at any time and to receive the fruits of that effort" and by "providing affirmative directions to the debtor that it must continue its activities of farming infringing trees." Plaintiff's Reply in Support of Summary Judgment at 7. Van Well asserts it is "the excessively broad rights being assigned to the lenders by the borrowers that gives lenders virtual ownership of the property, forever, unless the debt is repaid." It is on this premise Van Well believes Mony Life should be held liable for actual use of the patented trees and direct infringement of the '489 patent.

Van Well's contention suffers from both factual and legal infirmities. As a factual matter, there is a question as to whether there are infringing trees on the Wallula property. Secondly, while perhaps not highly relevant, the Court disagrees with Van Well's view that the mortgage agreement gave Mony Life the "right to farm the property *at any time*." While the agreement gave Mony Life the right to *inspect* the property at all reasonable times, only had there been a breach of the agreement, could Mony Life have taken all reasonable steps to protect its security interests, which hypothetically, could have included farming the property. As an aside, the Court also notes that the agreement instructed the mortgagee to "comply at all times with all laws...affecting the property."

Setting all factual disputes aside, even if the Court assumes the "scarlet reds" on the Wallula Orchard property were infringing, which it must do here, as matter of law the terms of the lending agreement, without other affirmative conduct, are insufficient to sustain a claim of direct infringement against this lender. Van Well is correct in acknowledging the issue of a mortgage lender's liability for plant patent infringement is one of first impression. "Use" of a patented item has not been defined by Congress thus its meaning has become a matter of judicial interpretation. Although the common law of patents interprets the word "use" broadly, the term "never has been taken 'to its utmost possible scope' of meaning any activity tangentially involving the accused item." *L.A. Gear Inc. v. E.S. Originals Inc.*, 859 F.Supp. 1294, 1298 (C.D.Cal.1994), citing *Roche Prods., Inc. v. Bolar Pharmaceutical Co.*, 733 F.2d 858, 861 (Fed.Cir.), *cert. denied*, 469 U.S. 856, 105 S.Ct. 183, 83 L.Ed.2d 117 (1984), *legislatively overruled on other grounds by* 35 U.S.C. § 271(e). For example, merely observing an allegedly infringing device, demonstrating that device, or observing a demonstration of a device, does not constitute "use" of that device. *Id.* Court decisions have also held that the mere displaying of a patented item for advertising may not technically constitute a "use," *Quantum Corp. v. Sony Corp.*, 16 USPQ2d. 1447, 1450 (N.D.Cal. 1990). Even the mere *possession* of a product or machine covered by a patent does not constitute infringement, absent a "threatened or contemplated" use or sale. See 4 Donald S. Chisum, Patents § 16.02[4] (1993); *Beidler v. Photostat Corp.*, 10 F.Supp. 628, 630 (W.D.N.Y.1935), *aff'd*, 81 F.2d 1015 (2d Cir.1936). Conversely, courts have explicitly held that planting, growing, and harvesting a patented crop is a use of the patented invention.

*Monsanto Co. v. Swann,* 308 F.Supp.2d 937 (E.D.Mo.2003).

The inquiry as to what constitutes "use" of a patented item is highly case-specific. Here, in support of its contentions, Van Well relies primarily upon analogies to the cases of *Hughes Aircraft Co. v. United States,* 29 Fed.Cl. 197, 29 U.S.P.Q.2d 1974 (1993) (launch of spacecraft that embodied patented device was an infringing use even though device was not activated until after spacecraft was in space); *Olsson v. United States,* 87 Ct.Cl. 642, 25 F.Supp. 495, 498 (1938) (possession and maintenance of disassembled howitzers was infringing use); and *Donnely Corp. v. Reitter & Schefenacker GmbH & Co.,* 189 F.Supp.2d 696, 704–05 (W.D.Mich.2002) (the display of an infringing product in a sales meeting where the purpose was to generate interest in the infringing produce constitutes infringing use). Van Well contends these cases support the broad reading of the term "use" and its theory of "constructive use" (as opposed to actual use), i.e. that Mony Life should be held liable because it had an ability to act with respect to the infringing trees and it possessed sufficient rights that it "could [have affected] the infringing activity if it so chose." Plaintiff's Reply in Support of Summary Judgment at 3.

There are several critical factual distinctions between this case and the cases cited by Van Well. First, the cases cited involved actual conduct involving the infringing product (i.e. the *launch* of the spacecraft, the *maintenance* of the howitzers, the *display* of the mirrors). Secondly, the cases cited involved *actual control* over and *possession* of the infringing product, which Mony Life did not have, nor could have had, at the time. Though Van Well describes this distinction as "but a thin reed," the Court knows not of a single case of direct infringement involving an alleged infringer who did not have *possession* of the infringing item. This makes logical sense: how could one use an item it does not have?

The principle at issue is very straightforward: to be held liable for direct infringement there must be some use of the infringing item, and here there was none. Encouraging or facilitating infringement is not direct infringement. Furthermore, the patent case law makes clear that having the mere ability to use or the mere capacity to control a patented item does not trigger liability for direct infringement absent the actual exercise of that right, power or control. In order to secure its investment, a secured creditor such as Mony Life will always demand rights and performance of obligations in order to assure the collateral pledged is maintained. If having these rights, without their actual exercise, was considered "use" of the property itself then no secure creditor would ever be protected. Accordingly, Mony Life's authority to control A/B Hop Farms farming activities on the Wallula Orchard property granted in the mortgage agreement cannot support a claim of direct infringement under 35 U.S.C. § 271(a).

The Court's conclusion is not influenced by the fact that the terms of the mortgage agreement are alleged to be "standard" with agricultural secured lenders. "Standard" lender behavior is a mutable concept, and it will respond to the liability rules the Courts and Congress put into place. *See Robert E. Scott, A Relational Theory of Secured Financing,* 86 Colum. L.Rev. 901, 934 (1986) (explaining that, if not for the liability rules currently in place, creditors would exercise more control over debtors than is now customary). In this context, while lenders may offer deep-pocket appeal to the patent holder, lender liability has not been met with widespread judicial acceptance in most tort-liability scenarios. Van Well's reply to the Court cites a recent Department of Justice task

force report on intellectual property acknowledging that "intellectual property theft threatens the very foundation of a dynamic, competitive, and stable economy." In the Court's opinion, holding a lending institution liable for direct infringement under these facts poses the same and other threats: at a minimum it would create tremendous apprehension and uncertainty in lending, instil additional discentives to lend and discourage productive enterprises, and perhaps threaten the very foundation of the agricultural lending industry and the economy it serves. The costs associated with defending against an intellectual property infringement suit and any liability associated therewith could easily exceed the amount originally at stake in the underlying transaction.

Neither the facts, established law, or public policy support the unprecedented notion of holding a lender liable for direct infringement based solely upon the terms of its lending agreement and not its actual conduct. Doing so would unreasonably extend the principle of direct infringement to a new context where it should not apply. The extension of patent protection urged by Van Well must be left to Congress to institute.

## C. Validity of Mony Life's Lien Interest

■ Finally, in and effort to save its claim in response to Mony Life's cross motion for summary judgment, Van Well requests this Court declare that Mony Life never held a valid lien interest in any of the allegedly infringing trees. It requests Mony's lien interests be voided and the infringing trees ordered destroyed. Relying primarily upon law derived from copyright cases, Van Well argues that Mony's state lien rights are void as conflicting against federal intellectual property law. Van Well's request has no support in the law of patents and as pointed out by Mony Life, ignores a litany of fundamental differences between patents and copyrights and their respective statutes. The Court declines to expand patent law in the manner that Van Well requests.

## IV. CONCLUSION

Inasmuch as no dispute exists as to any material fact, Mony Life's motion for summary judgment is granted. The evidence before the Court demonstrates that Mony Life did not use the patent in suit within the meaning of Section 271(a), nor offer to sell or sell infringing trees within the meaning of Section 271(c), and furthermore, that Van Well has abandoned its claim that Mony Life induced another to infringe the patent in suit within the meaning of Section 271(b).

For the foregoing reasons and for good cause shown, the Court hereby **DENIES** Van Well's motion for partial summary judgment (Ct.Rec.25) and **GRANTS** Mony Life's motion for summary judgment (Ct. Rec.41) on the issue of infringement of the 4,839 patent.

**IT IS SO ORDERED.** The District Court Executive is hereby directed to enter this order and furnish copies to counsel.